### RANI SIKAND *v.* PATRICIA WILSON-COKER, COMMISSIONER OF SOCIAL SERVICES (SC 17244)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

---

Argued October 19, 2005—officially released January 17, 2006

*Tanya Feliciano DeMattia*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellant (defendant).

*Priya Sinha Cloutier*, with whom was *Shirley Bergert*, for the appellee (plaintiff).

SULLIVAN, C. J. The primary issue in this appeal is whether the plaintiff, Rani Sikand, is entitled to non-emergency medical transportation services to and from her psychologist's office under the state's medicaid program. LogistiCare, Inc. (LogistiCare), the medical transportation broker for the department of social services (department), had provided transportation services between the plaintiff's home and her psychologist's office. In April, 2003, LogistiCare terminated the transportation services, claiming that they were no longer covered following certain amendments to the medicaid program that eliminated coverage of services of independently enrolled psychologists. After an administrative hearing, the hearing officer upheld the termination of the services. The plaintiff then appealed from that decision to the trial court pursuant to General Statutes § 4-183,[1] and the trial court sustained the appeal. The defendant, Patricia Wilson-Coker, the commissioner of social services (commissioner), now appeals from the judgment of the trial court.[2] We reverse the judgment of the trial court.

To provide context for the facts and procedural history of this case, we set forth at the outset a brief overview of the relevant medicaid provisions. "Title XIX of the Social Security Act, 42 U.S.C. §§ 1396—1396s, commonly known as the Medicaid Act, is a federal-state cooperative program designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of medical care." *Weaver*

[1] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[2] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

v. *Reagen*, 886 F.2d 194, 197 (8th Cir. 1989). "Although a state is not required to participate in the Medicaid program, once it chooses to do so it must develop a plan that complies with the Medicaid statute and . . . regulations [promulgated by the secretary of the United States Department of Health and Human Services]." *Himes* v. *Shalala*, 999 F.2d 684, 686 (2d Cir. 1993). Federal medicaid regulations mandate that certain specified health services must be covered by a state plan; see 42 C.F.R. §§ 440.210 and 440.220; and allow states the option of covering other types of services. See 42 C.F.R. § 440.225.

General Statutes § 17b-2 (8)[3] designates the department as the state agency responsible for administering the state's medicaid program. The commissioner is authorized to promulgate regulations necessary for the administration of the program. See General Statutes § 17b-262.[4] In 2002, the legislature enacted General Statutes § 17b-28e, which required the commissioner to amend the state medicaid plan to "implement the provisions of public act 02-1 of the May 9 special session concerning optional services under the Medicaid program." [5] In response, the commissioner eliminated from the plan, inter alia, services provided by independently enrolled psychologists to individuals over the age of

---

[3] General Statutes § 17b-2 provides in relevant part: "The Department of Social Services is designated as the state agency for the administration of . . . (8) the Medicaid program pursuant to Title XIX of the Social Security Act . . . ."

[4] General Statutes § 17b-262 provides in relevant part: "The Commissioner of Social Services may make such regulations as are necessary to administer the medical assistance program. . . ."

[5] Public Acts, Spec. Sess., May 9, 2002, No. 02-1, is entitled "An Act Concerning Adjustments to the State Budget for the Biennium Ending June 30, 2003, State Revenues and Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor" (act). It is not clear from our review of the act which provision required the elimination of optional services from the state medicaid program and the parties have not addressed this issue in their briefs.

twenty-one, effective January 1, 2003. See Department of Social Services, Policy Transmittal 2002-12 (December, 2002); Department of Social Services, Policy Transmittal 2002-009 (December 30, 2002). The plan continued, however, to cover services provided by psychologists associated with a clinic, hospital or other institutional program. See Memorandum from the Connecticut Medicaid Managed Care Council (December 13, 2002); Letter from David Parrella, Director, Medical Care Administration, Department of Social Services, to Connecticut Community Providers Association (January 13, 2003).

In addition to mandating coverage of certain health services, federal medicaid regulations require participating states to "ensure necessary transportation for recipients to and from providers . . . ." 42 C.F.R. § 431.53; see also Regs., Conn. State Agencies §§ 17-134d-33 (d) and 17-134d-33 (e) (1) (A).[6] "Provider" is defined in the federal regulations as "any individual or entity furnishing Medicaid services under an agreement with the Medicaid agency." 42 C.F.R. § 400.203. The Medical Assistance Manual issued by the federal Health Care Financing Administration provides that "[s]*tates are not obligated* to provide for transportation to secure medical care not included under the Medicaid plan . . . ." (Emphasis in original.) Health Care Financing Administration, Medical Assistance Manual, Pt. 6, § 6-20-00 (F) (1978) (Medical Assistance Manual). The governing state regulation provides: "Transportation may be paid only for trips to or from a medical provider for

---

[6] Section 17-134d-33 (d) of the Regulations of Connecticut State Agencies provides: "Payment for medical transportation services is available for all Medicaid eligible recipients subject to the conditions and limitations which apply to these services."

Section 17-134d-33 (e) (1) (A) of the Regulations of Connecticut State Agencies provides: "Medicaid assures that necessary transportation is available for recipients to and from providers of medical services covered by Medicaid, and, subject to this regulation, may pay for such transportation."

the purpose of obtaining medical services covered by Medicaid. If the medical service is paid for by a source other than the Department, the Department may pay for the transportation as long as the medical service is necessary and is covered by Medicaid." Regs., Conn. State Agencies § 17-134d-33 (e) (1) (C).

After the plaintiff's request for transportation had been denied in this case, the department sought to amend the language of the state medicaid plan pertaining to nonemergency transportation as follows: "The Department of Social Services is proposing to change the language in Attachment 3.1—D (1 & 2), provisions related to Non-emergency Medical Transportation services, consistent with the intent of the State Plan.

"Effective November 1, 2003 'The State agency will assure necessary transportation of Medicaid clients to and from providers of [medical] *Medicaid covered* services . . . .' " (Emphasis in original.) Notice of Proposed Changes to the Connecticut Medicaid State Plan (Title XIX), Connecticut Law Journal, Vol. 65, No. 22, p. 2B (November 25, 2003). The department proposed deleting the bracketed word and adding the emphasized words, so that the amended language would read as follows: "The State agency will assure necessary transportation of Medicaid clients to and from providers of Medicaid covered services . . . ." Department of Social Services, Policy Transmittal 2003-020, Attachment 3.1—D (2) (December 29, 2003), p. 1. The amended language was approved on March 3, 2004.[7]

---

[7] The portion of the state medicaid plan governing services covered and limitations on those services provided that "Medicaid assures that necessary transportation is available for recipients to and from providers of medical services covered by Medicaid . . . ." Department of Income Maintenance, Medical Services Policy Manual, Medical Transportation Services, § 175.E.I.a. Both the plaintiff and the commissioner suggest that the amendment to the plan submitted by the department on December 29, 2003, changed this language from "medical services covered by Medicaid" to "Medicaid covered services." The department's transmittal letter, however,

With this statutory and regulatory framework in mind we turn to our review of the facts and procedural history in the present case. The plaintiff has been diagnosed with schizoaffective disorder and borderline personality disorder with associated self-mutilation. As of April, 2003, she had been receiving treatment from Mitchell Danitz, a clinical psychologist, twice weekly for thirteen years. During that period, LogistiCare provided the plaintiff with transportation between her home in Willimantic and Danitz' office in West Hartford. On April 22, 2003, LogistiCare notified the plaintiff that it would no longer provide transportation services because the December, 2002 amendment to the state medicaid plan had eliminated services provided by independently enrolled psychologists.[8]

The plaintiff requested an administrative hearing to contest the termination of the transportation services. A hearing was held on May 19, 2003, and, on May 28, 2003, the hearing officer issued a ruling affirming the termination of the services. The officer concluded that the plaintiff's "psychologist is not a Medicaid-enrolled provider, and effective January 1, 2003, did not provide services that otherwise would be covered by the Medicaid program." She further concluded that "[t]here is no provision in federal law or state regulations with respect to the Medicaid program to support payment of the [plaintiff's] non-emergency medical transportation

states clearly that the department was "proposing to change Non-emergency Medical Transportation language from 'medical services' to 'Medicaid covered services." Department of Social Services, Policy Transmittal 2003-020, supra. In addition, the notice of proposed changes in the Connecticut Law Journal states: "The Department of Social Services is proposing to change the language in Attachment 3.1—D (1 & 2), provisions related to Non-emergency Medical Transportation services, consistent with the intent of the State Plan." Connecticut Law Journal, Vol. 65, No. 22, supra, p. 2B.

[8] Although Danitz' services were no longer covered by medicaid, he continued to treat the plaintiff. He accepted medicare payments as full compensation for his services.

costs for travel to a non-Medicaid-enrolled provider for services that are not covered by the Medicaid program."

The plaintiff appealed from the ruling to the trial court pursuant to § 4-183. The plaintiff also filed an ex parte motion for temporary injunctive relief requesting that the trial court temporarily enjoin the termination of the transportation services. The court granted the ex parte motion and, after a hearing, continued the injunction pending resolution of the appeal. Thereafter, the court heard arguments on the merits of the appeal and, on May 4, 2004, issued its ruling sustaining the appeal. The court reasoned that, under § 17-134d-33 (e) (1) (C) of the Regulations of Connecticut State Agencies, "in order to qualify for nonemergency medical transportation . . . [the plaintiff] must (1) receive treatment that is paid for by a source other than medicaid; (2) the treatment must be necessary; and (3) the medical service must be covered by medicaid." The court stated that it was undisputed that the first two requirements had been met. It also noted that "both parties agree that the state plan continues to provide and pay for psychological services so long as they are provided in an institutional or clinic setting." The court concluded that psychological services provided to the plaintiff were, therefore, "of a type of service 'covered by medicaid.'" Accordingly, the court concluded that the commissioner was required to provide the plaintiff with transportation services. This appeal followed.

The commissioner raises two claims on appeal. First, she claims that the trial court improperly determined that services provided by an independent psychologist constitute "medical services covered by Medicaid" within the meaning of § 17-134d-33 (e) (1) (C) of the regulations. Second, she claims that the trial court improperly granted the plaintiff's claim for injunctive relief. Specifically, she claims that the doctrine of sovereign immunity bars such a claim in the context of an

administrative appeal and that, even if the claim for injunctive relief could be characterized as a request for a stay pursuant to § 4-183 (f),[9] the plaintiff did not meet the criteria for granting a stay. We agree with the commissioner's first claim and conclude that the second claim is moot.

Whether the trial court properly concluded that the psychological services provided to the plaintiff were "medical services covered by Medicaid"; Regs., Conn. State Agencies § 17-134d-33 (e) (1) (C); is a question of statutory interpretation and, therefore, is a pure question of law. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 116, 830 A.2d 1121 (2003). "We have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) Id. The question before us has not previously been the subject of judicial scrutiny. Therefore, our review is plenary.

The parties are in agreement that an individual is entitled to nonemergency medical transportation to and from a medical provider only if the services provided are

---

[9] General Statutes § 4-183 (f) provides: "The filing of an appeal shall not, of itself, stay enforcement of an agency decision. An application for a stay may be made to the agency, to the court or to both. Filing of an application with the agency shall not preclude action by the court. A stay, if granted, shall be on appropriate terms."

"medical services covered by Medicaid." Regs., Conn. State Agencies § 17-134d-33 (e) (1) (C). The commissioner argues, however, that "medical services covered by Medicaid" means services for which the medicaid program actually will pay, not services *of a type* that are covered by medicaid. The plaintiff counters that medical services are covered by medicaid if the medicaid program will pay for the same type of services provided in another setting, even if the program will not pay for them if provided in the setting under review. Because the medicaid program will pay for psychological services provided in a clinic or hospital setting, she argues, psychological services are covered by medicaid regardless of where they are provided.[10] We agree with the commissioner.

---

[10] In support of her claim, the plaintiff relies in part on §§ 17b-262-467, 17b-262-468 and 17b-262-471 of the Regulations of Connecticut State Agencies. Because these regulations are part of the state medicaid program, she argues, and because they describe the psychological services that she received from Danitz, those services are covered by medicaid.

Section 17b-262-467 of the Regulations of Connecticut State Agencies provides in relevant part: "Psychologists' services provide professional therapeutic intervention relating to mental, emotional, and social problems involving individuals or groups, taking into consideration the sum of actions, traits, attitudes, thoughts, and mental state of an individual. . . ."

Section 17b-262-468 (15) of the Regulations of Connecticut State Agencies provides: " 'Psychologists' Services' that are permitted means clinical, diagnostic, and remedial services personally performed by a psychologist. Services include:

"(A) counseling and psychotherapy to individuals who are experiencing problems of a mental or behavioral nature; and

"(B) measuring and testing of personality, aptitudes, emotions, and attitudes."

Section 17b-262-471 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) The department shall pay for the following psychological services:

\* \* \*

"(2) Counseling and Psychotherapy

"(A) Diagnostic Interview

"Initial contact, review of available records, and personal interview with subject. Applicable only when formal testing is not possible;

"(B) Individual Counseling or Psychotherapy; and

"(C) Group Counseling or Psychotherapy. . . . "

First, the plain language of § 17-134d-33 (e) (1) (C) of the regulations, that "[t]ransportation may be paid only for trips to or from a medical provider for the purpose of obtaining medical services covered by Medicaid," clearly suggests that the actual services provided must be covered by medicaid. The plaintiff's interpretation would require us to read language into the regulation that does not exist, namely, that "transportation may be paid only for trips to or from a medical provider for the purpose of obtaining medical services *of a general type* covered by medicaid." "We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citation omitted; internal quotation marks omitted.) *Ghent* v. *Planning Commission*, 219 Conn. 511, 515, 594 A.2d 5 (1991).

Second, we are not persuaded that services provided by an independent psychologist in a private office setting necessarily *are* of the same type as psychological services provided in a clinic or hospital setting. The memorandum from the Connecticut Medicaid Managed Care Council, supra, states that the medicaid program "will continue to reimburse [psychological] services provided as *part* of a clinic, hospital or other institutional program." (Emphasis added.) In addition, the commissioner points out that the State Medicaid Manual provides that "Medicaid provides coverage of various types of organized outpatient programs of psychiatric treatment. These programs are covered primarily as either outpatient hospital services (42 CFR [§] 440.20 [a]) or as clinic services (42 CFR [§] 440.90)." Health Care Financing Authority, State Medicaid Manual, Pt. 4, § 4221 (A) (1988) (State Medicaid Manual). It also provides that patients who receive outpatient clinic or hospital psychiatric services should be evaluated by a team including, "at a minimum, a physician

and an individual experienced in diagnosis and treatment of mental illness . . . ." Id., § 4221 (B). These provisions suggest that, if the state has not adopted an optional medicaid provision covering psychological services, then the medicaid program does not contemplate the provision of psychological services *as such,* but only as a component of hospital or clinic services.

The plaintiff does not dispute, and the record supports a conclusion, that there is a rational basis for distinguishing between services provided by an independent provider and services provided in a clinic or hospital, even when the underlying services are similar. We note, for example, that the memorandum from the Connecticut Medicaid Managed Care Council, supra, and the provisions of § 4221 of the State Medicaid Manual, supra, suggest that one basis for the distinction may be that patients in an institutional setting generally have more severe disorders and more extensive medical needs than those who seek treatment from independent psychologists and, therefore, that psychological services provided in such settings are more essential to maintaining the patient's quality of life. This distinction may be illustrated by way of analogy. If the department determined that the medicaid program would pay for major surgery performed in a hospital; i.e., heart surgery, but not for more routine surgical care provided in a physician's office; i.e., removal of a splinter, it would make little sense to conclude that, even though medicaid would not pay for the removal of a splinter by a private physician, the service was the "same type" of service as heart surgery and, therefore, medicaid must provide transportation services to the private physician.[11] It would be more reasonable to conclude that

---

[11] We do not intend to suggest that the plaintiff's mental disorder in the present case was comparable in severity to an injury from a splinter. Indeed, it is possible that her mental disorder was as severe as mental disorders treated in institutional settings. Nevertheless, the state reasonably could conclude that individuals receiving psychological services from independent physicians are, *as a class,* generally in lesser need of care than the class of

the state intended that an individual should go to the hospital if his medical condition is serious and, if it is not, the patient should either provide his own transportation to the physician's office or forgo treatment altogether.

Indeed, it would appear that medical services provided by virtually *any* type of independent health care provider could be provided as a hospital service. See Memorandum from the Connecticut Medicaid Managed Care Council, supra (department will no longer cover services from independent podiatrists, chiropractors, naturopaths, physical therapists, licensed audiologists and speech therapists, but will reimburse for such services provided in institutional setting). A conclusion that all medical services provided by independent providers are therefore covered by medicaid within the meaning of § 17-134d-33 (e) (1) (C) of the regulations would virtually eliminate the limits on the state's obligation to provide transportation services. Such a conclusion also would mean either that the state intended to go beyond federal guidelines providing that "*states are not obligated* to provide for transportation to secure medical care not included under the Medicaid plan"; (emphasis in original) Medical Assistance Manual, supra, § 6-20-00 (F); or that the federal government intended that the limits on the state's obligation would be similarly insignificant. We see no basis for either proposition.

The state has determined that psychological services provided by an independent provider, unlike those provided in a clinic or hospital, may be eliminated from the state medicaid program without seriously undermining the public health interests that the program was

individuals receiving psychological services from clinics or hospitals and that, if the option of seeking treatment from independent providers were eliminated, many individuals would be able to forgo treatment without dire consequences.

intended to protect. We cannot conceive of any reason why the state, with the approval of the relevant federal agencies, would reach that conclusion, yet also conclude that such services are so important that transportation services must be provided to and from the independent provider. Accordingly, we conclude that psychological services provided by an independent provider are not covered by medicaid within the meaning of § 17-134d-33 (e) (1) (C) of the regulations and that, therefore, the plaintiff was not entitled to transportation services to and from Danitz' office.

The plaintiff insists, however, that, although the amendment to the state plan "disallowed independent psychologists as compensable medicaid providers, a plain reading of the state regulation and state plan demonstrates [that] the [commissioner] anticipated situations in which [transportation services] would be provided although the medical provider was not compensated by medicaid." In support of this claim, she relies on the language of § 17-134d-33 (e) (1) (C) of the regulations that, "[i]f the medical service is paid for by a source other than the Department, the Department may pay for the transportation as long as the medical service is necessary and is covered by Medicaid." We agree with the plaintiff that the regulation contemplates the provision of transportation services in *some* situations in which the medical provider is not compensated by medicaid. For example, if an individual received psychological services in a hospital that participates in the medicaid program and a party other than medicaid paid for them, the individual might still be eligible for transportation services paid for by medicaid because the psychological services were covered by medicaid in the sense that medicaid would pay for them as a payor of last resort.[12] That does not mean necessarily,

[12] In support of its decision, the trial court relied in part on the department's decision in *In re B.H.*, Department of Social Services, Opinion No. 930221 (August 11, 1993). In that case, the department denied the appellant's request

however, that if an independent psychologist provides services, for which medicaid would not pay under any circumstances, and a party other than medicaid pays for them, the services are covered by medicaid. For the reasons discussed previously, we have concluded that that is not the case. Accordingly, we reject this claim.

We next address the commissioner's claim that the trial court improperly granted injunctive relief in the context of an administrative appeal. We conclude that this issue is moot. Because the trial court ordered the commissioner to provide transportation services pending resolution of the administrative appeal, the relief terminated upon the filing of this appeal.[13] Accordingly,

---

for transportation services to a physical therapist who was not an enrolled medicaid provider. Id., 5. The appellant's mother paid for the physical therapy. Id. The hearing officer upheld the appeal and ordered the department to provide transportation services, partly because there was no dispute that the physical therapy at issue "would be covered if the provider participated in Medicaid . . . ." Id., 7.

In the present case, the trial court concluded that this decision "supports a determination that in deciding whether or not [transportation services are] required is determined by the type of 'medical service' to be provided rather than the status of the 'service provider.' " The commissioner argues that the decision "is inapplicable . . . because it predates the state plan amendment at issue here, and does not seem to have been followed by the agency itself or any court decision since its issuance." She argues that, contrary to the *In re B.H.* decision, medical services are covered by medicaid only if they are provided by a "provider" as that term is defined by federal regulation. See 42 C.F.R. § 400.203 (defining "provider" as "any individual or entity furnishing Medicaid services under an agreement with the Medicaid agency"). We need not decide that question in the present case, however, because we have concluded that psychological services, as such, are not covered by medicaid, unless they are provided as a component of hospital or clinic services.

[13] Cf. Practice Book § 61-11 (b) ("any stay that was in effect during the pendency of any administrative appeal in the trial court shall continue until the filing of an appeal"). To the extent that the injunctive relief ordered by the trial court can be characterized as a stay of the department's denial of transportation services, the commissioner was required to challenge the order in a motion for review. See Practice Book § 61-14 ("[t]he sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under Section 66-6").

this court can grant no practical relief to the commissioner. See *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 81 Conn. App. 659, 661, 841 A.2d 246 (2004) ("[a]n issue is moot when the court can no longer grant any practical relief" [internal quotation marks omitted]).

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other justices concurred.