EARL O. PASQUARIELLO *v.* STOP AND SHOP
COMPANIES, INC., ET AL.
(SC 17595)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued January 4—officially released March 20, 2007

*Norman J. Voog,* for the appellant (plaintiff).

*Clayton J. Quinn,* for the appellees (defendants).

*Opinion*

KATZ, J. The plaintiff, Earl O. Pasquariello,[1] appeals from the decision of the workers' compensation review board (board) reversing the decision of the workers' compensation commissioner for the seventh district (commissioner), who had concluded that the named

---

[1] The plaintiff died during the pendency of this appeal, and Diana Milner, the executrix of the plaintiff's estate, was substituted as the plaintiff in this action. For convenience, we refer to Pasquariello as the plaintiff throughout this opinion.

defendant, Stop and Shop Companies, Inc.,[2] could not reduce the plaintiff's total disability benefits by the amount of his social security old age insurance benefits (social security benefits), as provided under General Statutes (Rev. to 1997) § 31-307 (e).[3] The plaintiff contends that, contrary to the board's interpretation of § 31-307 (e), the legislature did not intend for the social security offset to apply to workers who had returned to the workforce after retiring and drawing social security benefits, and that to interpret the statute otherwise would violate the plaintiff's right to equal protection under the federal and state constitutions. We disagree and, accordingly, affirm the board's decision.

The record reveals the following undisputed facts and procedural history. On June 13, 1994, the plaintiff commenced part-time employment with the defendant. Prior to commencing this employment, the plaintiff had begun to receive social security benefits, and he continued to receive these benefits while working for the defendant. On April 26, 1997, the plaintiff sustained a work-related compensable injury to his right knee and back that caused him to be totally disabled. At that time, he was seventy-three years old. The defendant paid for the plaintiff's medical treatment, pursuant to

[2] Mac Risk Management, the insurer of the named defendant, Stop and Shop Companies, Inc., also is named as a defendant in this action. For convenience, we refer to Stop and Shop Companies, Inc., as the defendant.

[3] General Statutes (Rev. to 1997) § 31-307 (e) provides: "Notwithstanding any provision of the general statutes to the contrary, compensation paid to an employee for an employee's total incapacity shall be reduced while the employee is entitled to receive old age insurance benefits pursuant to the federal Social Security Act. The amount of each reduced workers' compensation payment shall equal the excess, if any, of the workers' compensation payment over the old age insurance benefits."

During the pendency of this appeal, the legislature repealed this subsection, effective May 30, 2006. See Public Acts 2006, No. 06-84, § 1. Accordingly, this appeal involves the propriety of reducing workers' compensation benefits to offset social security benefits for the period prior to the effective date of Public Act 06-84.

General Statutes § 31-294d, but did not pay the plaintiff any total incapacity benefits. The defendant contended that no such benefits were owed to the plaintiff because it was entitled, under § 31-307 (e), to reduce the plaintiff's total disability benefits by the amount of the plaintiff's social security benefits, which apparently were equivalent to, or in excess of, the plaintiff's disability benefits.[4]

The plaintiff filed a claim for total disability benefits, and the commissioner issued an award in favor of the plaintiff, concluding that the legislature did not intend for the social security offset to apply to persons who already had begun to receive social security benefits prior to their employment. The defendant then appealed from the commissioner's decision to the board, and the board reversed the commissioner's decision. It concluded that the text of § 31-307 (e) reflected no basis for distinguishing application of the offset depending on whether the receipt of social security benefits predated the employment. The board noted the plaintiff's contention that § 31-307 (e) would be unconstitutional if construed to permit the offset to apply under these facts, but recognized that, as an administrative agency, it lacked jurisdiction to reach the constitutional question.[5] Accordingly, the board sustained the defendant's

[4] We note that the record before this court is relatively scant in terms of the underlying facts in the present case. In particular, although the commissioner's award noted that the plaintiff had been entitled to a compensation rate of $162.54 per week, the record does not reflect the plaintiff's predisability wages or his social security benefits.

[5] In *Rayhall* v. *Akim Co.*, 263 Conn. 328, 338–40, 819 A.2d 803 (2003), this court concluded that it has jurisdiction to entertain a constitutional challenge to a statute arising in an administrative appeal despite the fact that the administrative agency lacks jurisdiction to decide the constitutional question in the first instance. See *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 64, 808 A.2d 1107 (2002); *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 343–44, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). "An appellant, like the plaintiff here, still must, however, satisfy other prerequisites to jurisdiction, such as the final judgment rule . . . standing . . . exhaustion of administrative remedies . . . and ripeness." (Citations omitted.) *Rayhall* v. *Akim Co.*, supra, 340. Because these prerequi-

appeal and reversed the commissioner's decision. This appeal followed.[6]

The plaintiff first claims that the board interpreted § 31-307 (e) in a manner that is inconsistent with the purpose of the statute and irrational. The plaintiff asserts that the board's construction is inconsistent with the legislature's intent to reduce disability benefits for persons who have retired from the workforce because, in his case, he had returned to the workforce after retiring and receiving social security benefits. Accordingly, he contends that the legislature intended for the offset to apply only to those persons who received social security benefits after they had commenced their employment and had become totally disabled. The plaintiff further claims that the legislature intended to prevent "double-dipping," specifically, the payment of two benefits that both are intended as wage replacements—social security benefits and disability benefits. He contends that, because he already had been drawing social security benefits before his employment with the defendant, once he commenced that employment, he had two sources of income and therefore would not be double-dipping by drawing both benefits. The plaintiff also claims that interpreting the offset to apply in the present case would violate the equal protection clause under the state and federal constitutions. We reject both the plaintiff's statutory and constitutional claims.

Before turning to the plaintiff's claims, we briefly summarize our decision in *Rayhall* v. *Akim Co.*, 263 Conn. 328, 819 A.2d 803 (2003), wherein this court inter-

sites have been satisfied in the present case, we consider the merits of the plaintiff's constitutional challenge in this appeal.

[6] The plaintiff appealed from the board's decision to the Appellate Court pursuant to General Statutes § 31-301b, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

preted the provision at issue in the present case, and which bears on both of the plaintiff's claims. In *Rayhall*, the plaintiff suffered a work-related injury for which he initially had received partial incapacity benefits,[7] and, pursuant to an agreement with his employer, elected to file early, at age sixty-two, for social security benefits. Id., 333. The plaintiff's condition thereafter deteriorated, he began to receive total incapacity benefits and his employer claimed that it was entitled to apply the social security offset against those incapacity benefits. Id., 333–35. On appeal to this court, the plaintiff claimed that § 31-307 (e) violated equal protection because the social security offset applied against total incapacity benefits, but not against partial incapacity benefits. Id., 341. We concluded that the statute should be examined under rational basis review; id., 345; and that it did not violate equal protection under that standard because, although there was no specific evidence of a legislative intent with respect to the offset, we could conceive of a rational basis for applying the offset only to total incapacity benefits. Id., 346–52. We first noted that § 31-307 (e) was enacted as part of a comprehensive scheme to reform the Workers' Compensation Act; see Public Acts 1993, No. 93-228, § 16; with the principal goal of cutting employers' costs in maintaining the workers' compensation system. *Rayhall* v. *Akim Co.*, supra, 346. We concluded that it was rational for the legislature to apply the offset only to total incapacity benefits because those benefits were of unlimited duration, whereas partial incapacity benefits were available for a limited duration. Id., 350–51. We further concluded that, although incapacity benefits are intended to compensate workers for wage loss resulting from their injuries; id., 349; the legislature rationally could decide to reduce wage replacement benefits for workers who

---

[7] The terms "incapacity benefits" and "disability benefits" are used interchangeably to refer to wage compensation benefits.

have retired from the workforce. Id., 351. We then reasoned that, "[b]ecause total disability benefits are of potentially unlimited duration, the legislature rationally could have determined that receipt of old age social security benefits establishes a presumption of retirement. With respect to partial incapacity, by contrast, the presumption of retirement is rebutted by the worker's actual employment . . . ." Id., 351–52. Nonetheless, "[w]e recognize[d] that the offset does not provide a precise fit so that it applies only to those workers who, irrespective of their injury, would have retired upon eligibility for social security retirement benefits. Under rational basis review of a facial challenge to the constitutionality of a statute, however, we need not find such a precise fit. . . . [A] statute must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (Internal quotation marks omitted.) Id., 352. With this background in mind, we turn to the plaintiff's claims in the present case.

I

"Established wisdom counsels us to exercise self-restraint so as to eschew unnecessary determinations of constitutional questions." (Internal quotation marks omitted.) *State* v. *Lemon*, 248 Conn. 652, 663 n.15, 731 A.2d 271 (1999). Accordingly, we first consider the statutory question, that is, whether the legislature intended for the social security offset in § 31-307 (e) to apply to all persons entitled to receive social security benefits concurrently with total incapacity benefits irrespective of when they became entitled to the social security benefits, as the board concluded, or whether the legislature intended for the offset to apply only to those persons who became entitled to social security benefits *after* they had commenced their employment and then became totally disabled, as the plaintiff contends. As this appeal involves our review of an administrative

agency's decision construing a statute, we begin with certain well established principles that guide our analysis.

"We have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Sikand* v. *Wilson-Coker,* 276 Conn. 618, 626, 888 A.2d 74 (2006). Although this court previously examined § 31-307 (e) in *Rayhall* v. *Akim Co.,* supra, 263 Conn. 328, we did not consider the legal issue presently before us, and the board does not contend that it has applied a time-tested interpretation. Accordingly, we do not defer to the board's construction and exercise plenary review in accordance with our well established rules of statutory construction. *Sikand* v. *Wilson-Coker,* supra, 626.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and

unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ."[8] (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 212, 901 A.2d 673 (2006).

We begin with the text of § 31-307 (e), which provides: "Notwithstanding any provision of the general statutes to the contrary, compensation paid to an employee for an employee's total incapacity shall be reduced while the employee is entitled to receive old age insurance

---

[8] We note that the plaintiff challenges the application of the "plain meaning" rule under § 1-2z, contending that that statute violates the separation of powers doctrine and that this court should apply our rules of construction as expressed in *State* v. *Courchesne*, 262 Conn. 537, 560–77, 816 A.2d 562 (2003), which legislatively was superseded by § 1-2z. We decline to reach this claim for two related reasons. First, we conclude that the specific facts of this case raise a question as to whether the legislature intended for the offset to apply under such facts, and therefore § 1-2z authorizes us to consider extratextual sources. See, e.g., *State* v. *George J.*, 280 Conn. 551, 566, 910 A.2d 931 (2006) (considering legislative history and genealogy of statutory limitations period for sexual offenses against minors to determine whether legislature intended broader meaning of "victim" to apply under facts of case to include victim's legal representative); *Colangelo* v. *Heckelman*, 279 Conn. 177, 184 and nn. 9 and 10, 900 A.2d 1266 (2006) (considering legislative history to determine whether legislature intended to impose special hazard of employment exception, not expressly provided, in exclusion of certain torts from exclusivity provision of Workers' Compensation Act). Second, given this conclusion, we would be rendering an advisory opinion as to whether § 1-2z violates the separation of powers doctrine. "[W]e have consistently held that we do not render advisory opinions. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." (Internal quotation marks omitted.) *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 419, 880 A.2d 882 (2005). Accordingly, we decline to address this issue.

benefits pursuant to the federal Social Security Act. The amount of each reduced workers' compensation payment shall equal the excess, if any, of the workers' compensation payment over the old age insurance benefits." General Statutes (Rev. to 1997) § 31-307 (e). The dispositive phrase appears to be "*while* the employee is entitled to receive [social security] benefits . . . ." (Emphasis added.) General Statutes (Rev. to 1997) § 31-307 (e).

In the absence of any statutory definition, we construe the term "while" in accordance with "the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). "While" is defined to mean "during the time that . . . ." Webster's Third New International Dictionary. Thus, the statute prescribes that social security benefits shall be deducted from total disability payments during the time that the employee is entitled to receive social security benefits. This phrase is broad and without limitation. Accordingly, the offset appears to apply whenever an employee concurrently is entitled to total disability and social security benefits. Had it intended otherwise, the legislature could have provided a specific exception to the offset for workers who became entitled to social security benefits before they became eligible for total incapacity benefits. At the very least, the legislature could have used language suggesting that the offset would apply only to social security entitlements accruing after employment had commenced, such as "upon the employee becoming entitled to," or "once the employee becomes entitled to," social security benefits.

To construe the statute to apply whenever the two benefits exist concurrently does not appear on its face to be irrational or to yield absurd results. This construction treats employees similarly situated in the same manner—all employees who are entitled to social security benefits while they are receiving total disability

benefits will have their disability benefits reduced in an amount proportionate to the social security benefits.

We recognize, however, that, despite its equal *application*, the offset may have a different *effect* on some workers. Workers like the plaintiff, who received social security benefits before becoming totally disabled, necessarily will receive a lesser percentage of their predisability income after they become disabled than workers who become disabled and thereafter are entitled to receive social security benefits.[9] Workers similarly situated to the plaintiff also would receive less workers' compensation benefits than a similarly disabled worker who was not yet eligible for social security and subject to the concomitant offset. Although the offset does not

[9] The following hypothetical illustrates this point. A and B are employed at the same job, paying $1000 per month. A, however, is five years older than B and had been receiving $800 per month in social security before starting his employment. Therefore, predisability, A has $1800 in income, and B has $1000 in income. A and B then become totally disabled as the result of work-related injuries, which entitles them to $750 per month in total incapacity benefits in lieu of wages. Thereafter, B also becomes eligible for social security benefits, the same $800 benefit per month that A had been receiving. Both workers would receive, after application of the offset, $800, all from social security (the $750 disability benefit would be reduced to zero because the $800 social security benefit exceeds the disability benefit, leaving only the $800 in social security benefit). Therefore, in terms of pure dollars at a given point in time, the two workers are affected similarly by the offset. The $800 in social security benefits, however, represents 44 percent of A's predisability income of $1800, but 80 percent of B's predisability income of $1000.

Although the exact percentage of A's predisability income will vary if the income variables are changed, it appears that A always ends up with a significantly lesser percent of predisability income than B. Thus, for example, assume that A and B have the same predisability income of $2000, but A's income is comprised in equal parts of social security and wages. Upon becoming disabled, each worker is entitled to receive 75 percent of his wages as disability benefits. B then becomes eligible for $1000 in social security benefits, at which point the offset applies to both workers. A would receive $1000 (all from social security), and B would receive $1500 ($500 in disability benefits after application of the offset and $1000 in social security). A's benefits represent 50 percent of his predisability income, and B's benefits represent 75 percent of his predisability income.

affect payment of medical expenses; see General Statutes § 31-294d; or specific indemnity awards;[10] see General Statutes § 31-308 (b) and (d); it reduces or, as in the present case, may eliminate altogether total incapacity (wage replacement) benefits. Thus, we recognize that uniform application of the offset may create unfair results for some persons, specifically those older workers who, after becoming entitled to social security benefits, return to work because those benefits alone are not enough to sustain them.

We note, however, that, although some unfairness may result from applying the offset to workers like the plaintiff, his construction of the statute would result in a far greater inequity to other workers. Under the plaintiff's construction, workers like himself would be entitled to draw *full* income from both social security and disability benefits, whereas other workers who first became disabled and then later became eligible for social security would have their disability benefits reduced by the amount of their social security. Because total disability benefits are of an unlimited duration; see General Statutes § 31-307 (a); and the offset applies for this same unlimited period, this imbalance would continue ad infinitum.

Nonetheless, the plaintiff underscores the fact that, in *Rayhall*, we concluded that the offset rationally was limited to the totally disabled because the legislature reasonably could have presumed that the receipt of social security benefits established a presumption of retirement and, therefore, absence of need for the replacement of wages afforded by the total incapacity benefits, a presumption that does not hold true in his case. We implicitly rejected this contention, however,

---

[10] "[S]pecific indemnity awards . . . compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part." *Rayhall* v. *Akim Co.*, supra, 263 Conn. 349.

in *Rayhall*. As we noted previously in this opinion, we determined that § 31-307 (e) was rational despite the fact that "the offset does not provide a precise fit so that it applies only to those workers who, irrespective of their injury, would have retired upon eligibility for social security retirement benefits. . . . [S]o long as the line drawn by the [s]tate is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. . . . We cannot say that the line drawn in the present case is not rationally supportable." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, supra, 263 Conn. 352–53.

We are mindful that it is not an uncommon problem, unfortunately, for older persons to need to supplement their social security benefits to maintain a reasonable standard of living. "[I]t is neither unusual nor extraordinary for elderly persons to be financially vulnerable. The Social Security Administration reports that Social Security benefits, which are paid to [nine] out of every [ten] Americans [sixty-five] and older, represent the major source of income for the elderly. Over [one half] of those married and almost [three fourths] of unmarried retired persons receive 50 [percent] or more of their income from Social Security with the average monthly benefit at approximately $1,000."[11] *United States* v. *Rajwani*, United States Court of Appeals, Docket No. 05-10648 (5th Cir. January 16, 2007), citing Social Security Administration, Press Office, Fact Sheet (July 20, 2006), available at http://www.ssa.gov/pressoffice/factsheets/basicfact-alt.pdf.

Indeed, the legislative history of No. 06-84, § 1, of the 2006 Public Acts, prospectively repealing the offset

---

[11] Congress recognized these realities when it enacted the Senior Citizens Freedom to Work Act of 2000, which eliminated an earnings offset that had reduced social security benefits for seniors who worked while receiving these benefits. See Pub. L. No. 106-182, § 4 (b), 114 Stat. 199 (2000).

provision; see footnote 3 of this opinion; reveals that the legislature repealed § 31-307 (e) because it recognized the limited financial resources available to older workers and the inequities affecting *all* older workers as a result of application of the offset. See 49 S. Proc., Pt. 9, 2006 Sess., pp. 2617–22; 49 H.R. Proc., Pt. 16, 2006 Sess., pp. 5137–41, remarks by Representative Kevin Ryan; Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 2006 Sess., pp. 275–77, written statement by Howard B. Schiller of the Connecticut Trial Lawyers Association, Workers' Compensation Section. Nothing in this legislative history, however, suggests that the legislature believed that the offset had not applied to retired seniors returning to work; see *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 597, 830 A.2d 164 (2003) (subsequent legislative action may throw light on legislative intent of earlier related act); *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 541, 494 A.2d 555 (1985) (same); indeed, there is evidence to the contrary. See 49 S. Proc., supra, p. 2622, remarks of Senator Andrew W. Roraback; Conn. Joint Standing Committee Hearings, supra, p. 249, written statement by Lori Pelletier of the Connecticut AFL-CIO. Accordingly, there is no evidence, textual or extratextual, that suggests that the legislature intended to exclude from application of the social security offset in § 31-307 (e) those older workers who become eligible for social security, retire and then return to the workforce.

As we previously have noted on many occasions, "the primary responsibility for formulating public policy resides in the legislature"; *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002); and, within constitutional limits, we are constrained to recognize the balance that the legislature has struck in the workers' compensation scheme between the competing needs of employees and

employers. See id.; *Common Fund* v. *Fairfield*, 228 Conn. 375, 380, 636 A.2d 795 (1994). Thus, given the prospective application of the repeal of § 31-307 (e), we are constrained to apply the statute in the present case as the legislature intended unless it has run afoul of constitutional restraints.

II

We therefore turn to the plaintiff's claim that construing the offset in § 31-307 (e) to apply to persons who have returned to the workforce after retiring and drawing social security benefits would violate his constitutional right to equal protection. The plaintiff first contends that this provision discriminates amongst the totally disabled, a protected class under the Connecticut constitution,[12] and, therefore, the statute must be reviewed, and cannot survive, under strict scrutiny. The plaintiff next contends that, even if the statute is not subject to strict scrutiny, it fails rational basis review and therefore would be unconstitutional under the equal protection clause of both the state and federal constitutions.[13] We conclude that § 31-307 (e) does not violate equal protection by applying the offset to per-

[12] Article first, § 20, of the constitution of Connecticut, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." As we noted in our decision in *Rayhall* v. *Akim Co.*, supra, 263 Conn. 343–44 n.14, "[w]e have not decided previously whether 'incapacity,' as that term is used in the Workers' Compensation Act, is equivalent to 'disability,' as that term is used in article first, § 20, of our state constitution, as amended. We assume for purposes of this appeal, without deciding, that the terms are essentially equivalent."

[13] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

sons who retire, receive social security and then return to the workforce.

"In order to analyze the plaintiff's claim, we first must determine the standard by which the statute's constitutional validity will be determined—in other words, the level of scrutiny required. . . . This court has held, in accordance with the federal constitutional framework of analysis, that in areas of social and economic policy that neither proceed along suspect lines nor infringe fundamental constitutional rights, the [e]qual [p]rotection [c]lause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement* [*Board*] v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368] (1980), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. [432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]. . . . If, however, state action invidiously discriminates against a suspect class or affects a fundamental right, the action passes constitutional muster . . . only if it survives strict scrutiny. *Daly* v. *DelPonte*, 225 Conn. 499, 513, 624 A.2d 876 (1993). Under that heightened standard, the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, supra, 263 Conn. 342–43.

Turning to the plaintiff's claim, we recognized in *Rayhall* that, although the federal constitution does not recognize disability as a suspect class, the Connecticut constitution has designated disability as a suspect class.

Id., 343; see footnote 12 of this opinion. We also recognized that equal protection challenges are predicated on invidious discrimination, not just simply different treatment. *Rayhall* v. *Akim Co.*, supra, 263 Conn. 343–45. "[W]hen the state discriminates against the disabled, or a class of the disabled, in favor of the able-bodied, invidious discrimination is presumed and strict scrutiny is applied. *Daly* v. *DelPonte*, supra, 225 Conn. 513–14. On the other hand, when the state discriminates amongst members of the protected class, invidious discrimination cannot necessarily be presumed." *Rayhall* v. *Akim Co.*, supra, 344. Given the nature and purpose of the Workers' Compensation Act, we concluded that, even though the offset discriminated amongst the disabled because it applied to one subset of the disabled, the totally disabled, but not to another subset, the partially disabled, there was no invidious discrimination. Id., 344–45. Accordingly, we applied rational basis review to the statute and concluded that it was constitutional. Id., 345–46.

By contrast to the claim in *Rayhall*, it is clear that § 31-307 (e) does not discriminate amongst the totally disabled, as the plaintiff claims. The offset applies to all persons who are totally disabled and concurrently eligible for social security. That difference is not one based on disability; it is one based on age. Entitlement to social security commences at age sixty-two or older. See 42 U.S.C. § 402 (a).[14] Thus, the only reason the offset disparately impacts the plaintiff in certain ways

---

[14] Section 402 (a) of title 42 of the United States Code provides: "Old-age insurance benefits

"Every individual who—

"(1) is a fully insured individual (as defined in section 414 [a] of this title),

"(2) has attained age 62, and

"(3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained retirement age (as defined in section 416 [*l*] of this title),

"shall be entitled to an old-age insurance benefit for each month, beginning with—

"(A) in the case of an individual who has attained retirement age (as

is because he is older than other workers who were not yet entitled to social security when they became disabled.[15] Disparate impact, however, is only a starting point in analyzing an equal protection claim. *Collier* v. *Barnhart*, 473 F.3d 444, 448 (2d Cir. 2007); *Kilcullen* v. *New York Dept. of Transportation*, 33 F. Sup. 2d 133, 140 (N.D.N.Y. 1999).

Age is not a suspect class under either the state or federal constitution. See *Massachusetts Board of Retirement* v. *Murgia*, 427 U.S. 307, 313–14, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976); *State* v. *McDougal*, 241 Conn. 502, 517, 699 A.2d 872 (1997). Accordingly, rational basis review applies to claims of discrimination on the basis of age.

"In order for a statute to withstand rational basis review, we consider whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. *Zapata* v. *Burns*, 207 Conn. 496, 507, 542 A.2d 700 (1988); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 577, 512 A.2d 893 (1986). . . . [U]nder this analysis, the legislature is not required to articulate the pur-

defined in section 416 [*l*] of this title), the first month in which such individual meets the criteria specified in paragraphs (1), (2), and (3), or

"(B) in the case of an individual who has attained age 62, but has not attained retirement age (as defined in section 416 [*l*] of this title), the first month throughout which such individual meets the criteria specified in paragraphs (1) and (2) (if in that month he meets the criterion specified in paragraph [3]),

"and ending with the month preceding the month in which he dies. Except as provided in subsection (q) and subsection (w) of this section, such individual's old-age insurance benefit for any month shall be equal to his primary insurance amount (as defined in section 415 [a] of this title) for such month."

[15] Indeed, the plaintiff, as a person who returned to the workforce after retiring, is treated entirely consistently under the statutory scheme with a comparably aged worker who became eligible for social security benefits while continuing to work and then becomes totally disabled. In both situations, the workers initially had received wages from their employment while

pose or rationale for its classification. The test . . . is whether this court can conceive of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis." (Internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, supra, 263 Conn. 346.

The reasons we set forth in *Rayhall* for our conclusion that § 31-307 (e) is rationally related to a legitimate purpose similarly apply in the present case. Indeed, the plaintiff in the present case is similarly situated in significant respects to the plaintiff in *Rayhall*, who also began to receive social security benefits before he became entitled to total disability benefits. In *Rayhall*, we reasoned that § 31-307 (e) was enacted as a part of a comprehensive reform to cut the costs of maintaining the workers' compensation scheme. Id., 346. "[R]educing costs to employers and insurers on the amount of benefits payable under the Workers' Compensation Act is a legitimate goal. *Barton* v. *Ducci Electrical Contractors, Inc.*, [248 Conn. 793, 818, 730 A.2d 1149 (1999)]." *Rayhall* v. *Akim Co.*, supra, 263 Conn. 348. A rational way to achieve that goal is to target the one benefit under the Workers' Compensation Act that is of unlimited duration. Id., 351. In some cases, the offset will reduce the amount of incapacity benefits, in others it will negate entirely the benefits.

As we have noted previously, however, the legislature rationally could have presumed that the receipt of social security benefits gives rise to the presumption of retirement and, hence, a lesser need for the replacement of wages under the workers' compensation scheme. Id., 351–52. Although this presumption of retirement was not true in the plaintiff's case when the offset *first* was applied, it likely will come to fruition at some point thereafter because it is unlikely that the plaintiff would have continued to work ad infinitum had he not become

drawing social security benefits, and, upon becoming totally disabled, were subject to having their incapacity benefits reduced by the offset.

disabled. In other words, although a given worker may not have planned to retire at the precise point in time when his social security eligibility and disability coincide, at some point thereafter, that worker likely would retire. Although it is unfortunate that application of the offset cannot coincide with the point in time when each worker subjectively intended to retire, we cannot envision a practical method whereby the legislature could have achieved that outcome in every case. Nor is the legislature required to prescribe the most effective method to achieve its intended purpose, in the absence of legislation that implicates a suspect class or fundamental rights. See *Daly* v. *DelPonte*, supra, 225 Conn. 516 (state action affecting suspect class implicates strict scrutiny and requires proof that state action is "sufficiently narrowly tailored to serve the state's interest").

Finally, we reiterate our conclusion in part I of this opinion that a less rational and more unequal result would occur were we to adopt the plaintiff's construction of § 31-307 (e). The disparate impact of the statute would be far greater on older workers were we to exclude from the offset only those workers who retire from, and then return to, the workforce. Indeed, when viewed from the vantage point of the workers against whom the offset still would apply, the plaintiff is not seeking equal treatment, he is seeking special treatment predicated solely on the fact that his eligibility for social security predated his injury.

In conclusion, "[t]he equal protection clause does not require absolute equality or precisely equal advantages . . . . Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground." (Citations omitted; internal quotation marks omitted.) *State* v. *Matos*, 240 Conn. 743, 760, 694 A.2d 775 (1997); see also *Dandridge* v. *Williams*, 397 U.S. 471, 90 S. Ct. 1153,

25 L. Ed. 2d 491 (1970) ("[i]f the classification has some reasonable basis, it does not offend the [c]onstitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality" [internal quotation marks omitted]). The legislature has established a reasonable ground for applying the offset to all persons concurrently receiving social security benefits and total incapacity benefits. Although we may question the fairness of the result in the present case given the overall intent of the Workers' Compensation Act, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."[16] *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993). Accordingly, the plaintiff's equal protection claim must fail.

The decision is affirmed.

In this opinion the other justices concurred.

---

[16] At bottom, the plaintiff's claim is not one of unequal treatment, but of disparate impact, and the plaintiff has failed to assert or establish the legal predicate for such a claim, intentional discrimination. See *Roberts* v. *Ward*, 468 F.3d 963, 970 (6th Cir. 2006) ("Although a facially neutral law can be challenged under the theory of 'disparate impact,' the inquiry for such a challenge focuses on whether it targets a group that has historically been the victim of discrimination or otherwise reflects invidious discrimination. *Personnel* [*Administrator*] *of Massachusetts* v. *Feeney*, 442 U.S. 256, 273, 99 S. Ct. 2282, 60 L. Ed. 2d 870 [1979].").