JOHN PLECITY *vs.* GEORGE MCLACHLAN HAT COMPANY ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

218

Argued November 1st, 1932—decided February 14th, 1933.

*John F. Chatfield,* for the appellant (defendant Manufacturers Casualty Insurance Company).

*S. Polk Waskowitz* and *Edward S. Pomeranz,* for the appellee (defendant American Mutual Liability Insurance Company).

*Adrian W. Maher,* for the appellee (defendant Employers Liability Assurance Corporation).

*Thomas R. Robinson,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellee (defendant Travelers Insurance Company).

*Edward A. Tyler,* for the appellee (defendant Merchants Mutual Casualty Insurance Company).

*DeLancey S. Pelgrift,* for the appellee (defendant Maryland Casualty Company).

*Cornelius J. Danaher,* with whom was *Philip Reich,* for the appellee (plaintiff).

MALTBIE, C. J. In this case the commissioner made a pro forma award. Section 5266 of the General Statutes provides that if the commissioner finds that a claim before him involves a doubtful question of law, which the public interest requires should be finally and definitely determined, he may find the facts as in other cases and make his award pro forma; that such an award shall be of the same effect as one in an ordinary case except in certain particulars which are then stated as follows: On the filing of the award the question comes before the Superior Court as though an appeal had been taken and that court thereupon reserves the case for the opinion of this court, unless in the opinion of the Superior Court the principles of law involved are free from reasonable doubt and public interest does not in fact require that they be determined by this court, in which case it may in its discretion hear and determine the controversy as in other cases. If no corrections in the finding are sought, the procedure outlined in the statutes is sufficient for the final determination of the case without any appeal to the Superior Court or to this court. If corrections in the finding are claimed, an appeal for that purpose is necessary, but it should be restricted

in scope to the issues involved in the effort to secure them. The function of the Superior Court where a pro forma award is made and an appeal seeking changes in the finding is filed, is to determine that appeal alone, thus settling the facts upon which this court will consider the principles of law involved in the award. Practice Book, p. 258, § 75. From the decision of such an appeal by the Superior Court an appeal may be taken to this court. But no appeal is necessary to bring before it the legal questions involved in the award. The record before us shows a failure to appreciate the function of an appeal where a commissioner makes a pro forma award and we call attention to the proper practice, although that failure in no way affects the disposition of this case by us.

The plaintiff became incapacitated December 5th, 1930, by reason of mercurial poisoning resulting from his employment by the defendant the George McLachlan Hat Company. He had been employed by the company ever since 1917, except for a period from October, 1917, to May, 1919, when he was in the army, and a period when he made a trip to Europe in June, July and August, 1926, as a member of a troupe of gymnasts. Passing for the present the appellant's claims for corrections, the finding of the commissioner is that the plaintiff's employment previous to this trip was not a material factor in causing his disability; that the first manifestation of a symptom of the poisoning was in June or July, 1930; that his employment subsequent to that date was also not a factor in causing his disability; and that the disability did result from his employment between 1926 and June or July, 1930. During the period of the plaintiff's employment, the company had carried compensation insurance with various insurers as follows. From July 8th, 1919, to July 8th, 1922, with the

Employers Liability Assurance Corporation; from July 8th, 1923, to September 13th, 1923, with the Travelers Insurance Company; from July 21st, 1923, to September 10th, 1930, with the Manufacturers Casualty Insurance Company; from August 21st, 1930, to October 8th, 1930, with the Merchants Mutual Insurance Company; from September 18th, 1930, to November 11th, 1930, with the Maryland Casualty Company; and from November 1st, 1930, to the date of the hearing, with the American Mutual Liability Insurance Company. The commissioner made his award against the employer and the Manufacturers Casualty Insurance Company, dismissing the claims against the other insurers. The controversy upon this appeal is entirely one between the insurance companies to determine upon which rests the obligation to discharge the compensation due the plaintiff.

The Workmen's Compensation Act requires that every policy issued to an employer under its terms shall be so drawn as to cover the entire liability of the employer under Part B of the Act; General Statutes, §§ 5255 and 5256; and that as between an injured employee and an insurer, such a policy shall be conclusively presumed to cover the entire liability of the employer. General Statutes, § 5286. "The purpose of these provisions is to make certain that an employer shall at all times be in a position to fulfil all his obligations to his employees under the Act." *Witchekowski* v. *Falls Co.,* 105 Conn. 737, 739, 136 Atl. 565. The statutes, as we inferentially held in the case last cited, do not require a single continuous policy of insurance to cover the compensation which may become payable by an employer. *Miller Brothers Construction Co.* v. *Maryland Casualty Co.,* 113 Conn. 504, 515, 155 Atl. 709. Their requirements can be met by a succession of policies, one taking up the risk

where another drops it, provided at all times the whole liability of the employer for compensation is covered, and the point at which the transmission of risk from one company to another takes place is not of particular importance as regards the requirements of the statutes. Thus, for example, we may assume a case analogous to the one before us, where an employee incurs poisoning from his employment between the dates specified in one insurance policy as the beginning and end of its policy period, the symptoms of the disease manifest themselves between such dates as specified in a succeeding policy and incapacity results between such dates as specified in a third policy. In such a situation it would not be important, as far as the requirements of the statutes are concerned, whether the policies were expressly drawn so that each covered the obligation of the employer to pay compensation for any poisoning resulting from employment during its policy period or so that each covered his obligation to pay compensation for any such poisoning the symptoms of which manifested themselves during the policy period, or so that each covered his obligation to make compensation for any such poisoning incapacity from which resulted during its policy period. It follows that, to determine in such a case which of the insurers should bear the burden of the compensation, it is necessary to have recourse to the terms of the policies issued by them.

The policies of the insurers involved in this case, copies of which have been filed with us, are uniform as regards the provisions affecting its disposition, and we assume that that is also true with regard to the policies of the insurers which have not filed copies with us. In each policy the seventh clause reads as follows: "This agreement shall apply only to such injuries so sustained by reason of accidents occurring

during the policy period limited and defined as such in item 2 to such declarations." The item in the declarations referred to, leaving out the dates, reads as follows: "The period during which the Policy shall remain in force unless cancelled as in the Policy Provided (herein called the policy period), shall be from           to           at twelve and one minute o'clock a. m. standard time, as to each of said dates at the place where any operation covered hereby is conducted, as respects that operation, or at the place where any injury covered hereby is sustained, as respects that injury." The form of the seventh clause suggests that it was adopted at a time when our Compensation Act covered only accidental injuries and it is the apt way to determine the limits of the liability of the insurer as regards such injuries. It is by no means so apt to define the limits of the liability of the insurer in such a case as the one before us. Yet under the explicit requirements of the statute to which we have referred we must apply the language to the case before us in such a way that the liability of the defendant employer to meet all the requirements of the Compensation Act was fully covered by the policies issued to him at all times. When insurers issue policies in language which can be applied to the risks they purport to cover only by forcing it beyond its ordinary meaning and which is so indefinite that employees cannot tell with certainty which of several successive insurers of liability arising out of a single employment is responsible for the payment of compensation, we are justified by the ambiguous language used in putting such an interpretation upon it as will best serve to protect the interests of the employees to whom compensation may become due; moreover, we are required to do this by the express provisions of the statutes to which we have referred.

Where an employee becomes incapacitated by a compensable disease resulting from his employment and that employment has been continuous from the origin of the disease to the occurring of the incapacity it probably would not much matter from the standpoint of the employee what interpretation we put upon such provisions in the policies as we have quoted, in determining which of successive insurers should be liable. It sometimes happens, however, that the symptoms of a disease resulting from an employment may manifest themselves a considerable time after the employee has left that employment and incapacity may result at a time still further removed from it. Thus, in *Michna* v. *Collins Co.*, 116 Conn. 193, 164 Atl. 502, the symptoms of a tubercular condition resulting from pneumoconiosis due to wet grinding manifested themselves some six years after the employee had left the employment which caused the disease and a further period elapsed before incapacity resulted. If the time of the manifestation of the symptoms of the disease were taken as the criterion for fixing the liability of an insurer, and even more if the time of incapacity were taken, it might be that in the interval an individual employer had died or a corporate employer had ceased to exist and that there would be no insurer to which the employee could look for his compensation. Adequate protection of employees points to the conclusion that such policies as those before us should be construed as imposing an obligation upon the insurer to pay compensation for any compensable disease arising out of the employment between the dates fixed as the beginning and end of the policy period.

In *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 99 Atl. 507, we had before us a case where an employee, by working overtime and by exposure to the

weather, became exhausted, took a severe cold which five days later developed into pneumonia and shortly thereafter died. While we denied compensation in that case, we said (p. 162): "An accidental bodily injury may, therefore, be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected. The concurrence of accident and injury is a condition precedent to the right to compensation. On this record, the unusual weather conditions, or the consequent untimely and prolonged hours of labor, or both, may be said to supply the element of an untoward and unexpected condition of the employment. The direct and contemporaneous result of this accidental condition was exhaustion, and the record, therefore, shows that the decedent was accidentally exhausted on December 14th." In *Dupre* v. *Atlantic Refining Co.*, 98 Conn. 646, 651, 120 Atl. 228, we said of the *Linnane* case, that "all the conditions, including the decedent's night journey to the place of employment on foot in a heavy snowstorm, in response to an emergency call, his untimely and prolonged hours of work, and his exposure to extremes of heat and cold while at work, were grouped together and held to satisfy the broad definition of accident announced in that case." If we turn now to the seventh clause of the policies before us, we find that the policy is to apply to compensable personal injuries "sustained by reason of accidents occurring during the policy period." There is no question that the plaintiff suffered a compensable personal injury within that term as defined in the Workmen's Compensation Act. General Statutes, § 5223. The word "accident" as used in the policies must be taken to mean the conditions of employment

which produced the mercurial poisoning. It would follow that any and all insurers who carried the risk over the entire period of the employment which brought about the final incapacity would be liable for the compensation awarded on account of that incapacity.

Where the abnormal bodily condition which produces the incapacity is one which gradually develops and increases and during the period of that development more than one insurer is carrying the risk, the further question arises as to the liability of each to the employee of the insured. The policies in question impose upon the insurer, as indeed does the Act, a direct obligation to pay to each employee of the insured the amount of any compensation awarded him falling within their terms. *Piscitello* v. *Boscarello*, 113 Conn. 128, 130, 154 Atl. 168. The personal injury in this case, the poisoning, is a single injury and the award constitutes a single obligation. As regards an employee, under such circumstances neither the statutes nor the policies contain any provision for an apportionment of liability among the various insurers. A disease which is caused by the progressive effect of continuous employment results, in part at least, from each period of that employment. An interpretation of the terms of the policy which would make each insurer liable for only such portion of the personal injury resulting in the incapacity as can be attributed to the period of employment covered by its policy, would impose upon the employee a heavy burden of proof which would not accord with the evident purpose of the statutes to which we have referred. The policies should be interpreted to mean that each insurer whose policy covers the liability of the insured for any portion of the time during which the employment was a substantial factor in producing the poison-

ing, is liable to the employee for the entire amount of compensation awarded, and in such a situation the award should be made against all insurers so liable. The employee can of course have but one satisfaction, but he is entitled within that limitation to recover the amount of the award against any or all of the insurers. Whatever rights of contribution may exist between them, or whatever apportionment of liability they might claim as regards an insured who seeks from them reimbursement of compensation paid by him, are not matters for adjudication in these proceedings. *Witchekowski* v. *Falls Co.*, 105 Conn. 737, 741, 136 Atl. 565; *Kenez* v. *Novelty Compact Leather Co.*, 111 Conn. 229, 237, 149 Atl. 679.

According to the findings of the commissioner, neither the employment of the plaintiff before his trip to Europe in 1926 nor that after the symptoms of the disease manifested themselves in June or July, 1930, contributed in any appreciable degree to produce the poisoning or the resulting incapacity. As only the appellant, the Manufacturers Casualty Insurance Company, issued policies whose policy period covered the employment intervening between these two dates, the commissioner made his award against the employer and this insurer alone. The appellant, however, attacks these findings. The finding that the employment of the plaintiff before the trip to Europe in 1926 did not appreciably contribute to his disease or incapacity finds reasonable support in the evidence. It is not disputed that from November 1st, 1930, to the date of his incapacity he worked only four and one half days, and there was evidence that his working these days did not materially contribute to produce his incapacity. We can, however, find no support in the evidence for a conclusion that his employment after the manifestations of the symptoms

of the disease in June or July, 1930, and until about November 1st did not materially contribute to produce it. The finding states that mercury poisoning, of the type of that from which the plaintiff was suffering, is a disease or disorder arising from the absorption by the human body over a considerable period of time of more than the threshold dose of mercury, and that the threshold dose is the maximum amount which he could absorb without effect upon his health. There is nothing in the evidence to indicate that the plaintiff did not between the manifestations of the symptoms of the disease and his incapacity continue to absorb mercury beyond the maximum amount which he could absorb without effect upon his health and that this absorption was not a part of the continuous process which ultimately resulted in his incapacity. The finding must therefore be corrected to state that the plaintiff's employment after the latter part of October, 1930, instead of after the manifestations of the symptoms of the disease in June or July, 1930, did not materially contribute to produce the disease or incapacity. It is unnecessary for present purposes to determine whether the policy period of the policy of the Manufacturers Casualty Insurance Company terminated, as found by the commissioner, on September 10th, 1930, or, as claimed by that insurer, on August 30th, 1930. The other corrections sought are either immaterial or not justified upon the evidence.

Under the finding as corrected, the conditions of employment of the plaintiff materially contributed to produce the disease and incapacity, not merely between the dates specified as the beginning and end of the policy period of the appellant insurer, but also between the dates during which the commissioner has found that the policies of the Merchants Mutual

Insurance Company and the Maryland Casualty Company covered the employment.

There is error upon the appellant's appeal so far as it seeks corrections in the finding; the case is remanded to the Superior Court with direction to correct the finding in accordance with this opinion and to return the case to the commissioner to make an award in favor of the plaintiff against the defendant employer and the Manufacturers Casualty Insurance Company, the Merchants Mutual Insurance Company and the Maryland Casualty Company, insurers.

In this opinion the other judges concurred.