BERNADETTE PIZZUTO *v.* COMMISSIONER OF
MENTAL RETARDATION ET AL.
(SC 17840)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued April 17—officially released July 24, 2007

*Edward T. Dodd, Jr.*, with whom were *Anthony V. Federice* and, on the brief, *Laura Ondrush*, for the appellant (plaintiff).

*Michael J. Belzer,* assistant attorney general, with whom were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (named defendant).

*Opinion*

KATZ, J. The sole issue in this workers' compensation appeal is whether benefits under General Statutes § 31-308a,[1] which provides "additional compensation benefits for . . . partial permanent disability" resulting in a "loss of earnings" but which additional compensation cannot "exceed . . . the duration of the employee's permanent partial disability benefits" (disability bene-

---

[1] General Statutes § 31-308a provides: "(a) In addition to the compensation benefits provided by section 31-308 for specific loss of a member or use of the function of a member of the body, or any personal injury covered by this chapter, the commissioner, after such payments provided by said section 31-308 have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, and the weekly amount which such employee will probably be able to earn thereafter, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309. If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner, but in no event shall the duration of such additional compensation exceed the lesser of (1) the duration of the employee's permanent partial disability benefits, or (2) five hundred twenty weeks. Additional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state.

"(b) Notwithstanding the provisions of subsection (a) of this section, additional benefits provided under this section shall be available only when the nature of the injury and its effect on the earning capacity of an employee warrant additional compensation."

fits), may be awarded on the basis of a previous disability[2] if that disability is a substantial cause of a claimant's loss of earning capacity following a subsequent injury resulting in further disability. The plaintiff, Bernadette Pizzuto, appeals from the decision of the workers' compensation review board (board) reversing the decision of the workers' compensation commissioner for the fifth district (commissioner), which had ordered the named defendant, the commissioner of mental retardation,[3] to pay the plaintiff § 31-308a benefits for a period of weeks equivalent in duration to the period for which she had received benefits under General Statutes § 31-308 (b)[4] for her first disability after exhausting the bene-

[2] Although the term " 'disability' " can be used in the workers' compensation act to refer to a permanent impairment to a body part; see General Statutes § 31-275 (20); or to incapacity to work; see General Statutes § 31-275 (1) (G) (4); we use the term "disability" in this opinion to refer to a permanent physical impairment to a scheduled body part for which compensation is payable under General Statutes § 31-308 (b).

[3] GAB Robins North America, Inc., the workers' compensation insurer for the named defendant, also is named as a defendant in this action. For purposes of convenience, we refer to the commissioner of mental retardation as the defendant.

[4] General Statutes § 31-308 (b) provides in relevant part: "With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be seventy-five per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, or less than fifty dollars weekly. All of the following injuries include the loss of the member or organ and the complete and permanent loss of use of the member or organ referred to:

| "MEMBER | INJURY | WEEKS OF COMPENSATION |
|---------|--------|------------------------|
| | * * * | |
| "Back | | Number of weeks which the proportion of incapacity represents to a maximum of 374 weeks . . . ." |

fits she had received under § 31-308a for her second disability.[5] The board concluded that § 31-308a does not permit the commissioner to consider a previous disability when determining entitlement to an award under that section. We reverse the decision of the board.

The record reveals the following stipulated facts and relevant procedural history. On January 17, 1989, the plaintiff sustained a compensable lumbar back injury in the course of her employment by the department of mental retardation as a mental retardation worker at Southbury Training School (Southbury). The plaintiff had back surgery in 1989 and again in 1995. As a result of the 1989 injury, the plaintiff was assessed with a 20 percent permanent partial impairment of her back and, accordingly, received disability benefits under § 31-308 (b) for a period of 104 weeks. Thereafter, the plaintiff returned to her usual position at Southbury. The plaintiff did not receive § 31-308a benefits for the 1989 injury.

On July 2, 2000, the plaintiff sustained a second compensable lumbar back injury. As a result of that injury, the plaintiff was assessed as having an additional 5 percent permanent partial impairment of her back and, accordingly, received disability benefits under § 31-308 (b) for a period of 18.7 weeks. The plaintiff was unable to return to her usual position with the defendant. She thereafter obtained employment as a substitute teacher at approximately one third of the wages that she was earning at the time of the 2000 injury.[6] The plaintiff's treating neurosurgeon, Michael Karnasiewicz, concluded that the 1989 injury was a substantial factor in

---

[5] The plaintiff appealed from the board's decision to the Appellate Court pursuant to General Statutes § 31-301b, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] At the time of the 2000 injury, the plaintiff's weekly wages were $978.37. Her weekly wages as a substitute teacher were $350.

her inability to continue her usual employment with the defendant.

After the plaintiff had exhausted her § 31-308 (b) disability benefits for the July, 2000 injury, she received additional benefits under § 31-308a for a period of 18.7 weeks, equivalent to the duration of that disability award.[7] The plaintiff then filed a claim for additional § 31-308a benefits, claiming that she was entitled to those benefits because the January, 1989 injury had led to permanent disability and was a substantial factor in her inability to return to her usual employment with the defendant. The defendant contested the claim, taking the position that, under this court's decisions in *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 819 A.2d 260 (2003), and *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 729 A.2d 212 (1999), "when a worker has incurred a series of compensable injuries to the same body part, the last injury . . . controls the [plaintiff's] entitlement to all direct indemnity benefits and medical costs, except for § 31-308 (b) apportionable permanency."

The commissioner concluded that, taking into account the requisite factors under § 31-308a, the plaintiff was entitled to 104 weeks of benefits under that section as a result of the 1989 injury. The commissioner distinguished the plaintiff's situation from the apportionment cases on which the defendant had relied because those cases involved injuries sustained when the claimant had worked for two different employers. He further reasoned that the humanitarian purposes of

---

[7] The record does not indicate whether the plaintiff received the benefits relating to her second injury pursuant to a voluntary agreement or pursuant to an award by the commissioner. Thus, it is unclear whether the plaintiff ever had an opportunity to file a claim for one award under § 31-308 for the loss of earning relating to the entire 25 percent impairment resulting from both injuries.

the Workers' Compensation Act (act), General Statutes § 31-275 et seq., mandated this result.

The defendant then appealed to the board, which reversed the commissioner's decision. The board concluded that the present case was controlled by its decision in *Houghton* v. *Andover*, 4949 CRB-2-05-6 (May 18, 2006), a factually similar case wherein the board had concluded that the commissioner improperly apportioned § 31-308a benefits against the insurer responsible for benefits payable for the first of two injuries. The board noted that, although "the term 'apportionment' does not appear in the present Finding and Award, the practical result of relating a post second injury § 31-308a award back to the initial injury is the same in this case and we believe this is a distinction without a difference."[8] Accordingly, the board reversed the commissioner's decision. This appeal followed.

The plaintiff claims that she is entitled to § 31-308a benefits for her 1989 injury because her diminished earning capacity was caused substantially by that injury. She further claims that, because that injury is compensable, the duration of the award must be determined on the basis of the version of the statute in effect in 1989, under which there was no durational limit to those benefits. We agree with the plaintiff's first claim. We decline to address the plaintiff's second claim, how-

---

[8] The board also relied on its decision in *Fantano* v. *Stop & Shop Cos.*, 4946 CRB-3-05-5 (May 19, 2006), which it characterized as "delineat[ing] the factual elements required in order to assess benefits against an initial injury when the claimant suffers a second compensable injury," and found the present case distinguishable from that case. *Fantano*, however, stands for no such principle. *Fantano* involved a second injury that was noncompensable under the act—a nonwork-related automobile accident—and that second injury ultimately had not caused the claimant to sustain any further permanent disability or further wage loss. Although we carefully consider the board's reasoning in construing the act because of its expertise in applying the act, we nevertheless question its reliance on the cases cited in support of its decision.

ever, given that she never has claimed that the duration of the § 31-308a benefits should have exceeded the 104 weeks that the commissioner awarded to her and thus essentially is seeking an advisory opinion on that issue. See *Pasquariello* v. *Stop & Shop Cos.*, 281 Conn. 656, 664 n.8, 916 A.2d 803 (2007) ("[W]e have consistently held that we do not render advisory opinions. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal." [Internal quotation marks omitted.]).

At the outset, we note that the issue raised in this appeal, whether § 31-308a benefits may be awarded on the basis of a prior disability when that disability substantially contributes to a claimant's loss of earning capacity following a second disability, is one of statutory construction. The only aspect of § 31-308a that this court previously has construed relates to the offset of benefits provision; see *Starks* v. *University of Connecticut*, 270 Conn. 1, 31, 850 A.2d 1013 (2004); *Smedley* v. *Dept. of Mental Retardation*, 270 Conn. 32, 40–41, 850 A.2d 1007 (2004); which has no bearing on the issue before us in the present case. Because the relevant aspects of this statute have been subjected neither to previous judicial scrutiny nor to a time-tested interpretation by the board, we afford no special deference to the conclusion of the board. *Pasquariello* v. *Stop & Shop Cos.*, supra, 281 Conn. 663. Instead, we exercise the plenary review we otherwise apply to such questions of law. *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning,

General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Pasquariello* v. *Stop & Shop Cos.*, supra, 281 Conn. 663–64.

Moreover, "[i]n applying these general principles, we are mindful that the act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." (Citation omitted; internal quotation marks omitted.) *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 245, 902 A.2d 620 (2006). Accordingly, "[i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. *Biasetti* v. *Stamford*, 250 Conn. 65, 74 n.7, 735 A.2d 321 (1999). . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citation omitted; internal quotation marks omitted.) *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 498–99, 870 A.2d 1066 (2005).

With these principles in mind, we turn to the text of § 31-308a, which provides in relevant part: "In addition to the compensation benefits provided by section 31-

308 for specific loss of a member or use of the function of a member of the body, or any personal injury covered by this chapter, the commissioner, after such payments provided by said section 31-308 have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury . . . and the weekly amount which such employee will probably be able to earn thereafter . . . to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age . . . . If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner, but in no event shall the duration of such additional compensation exceed the lesser of (1) the duration of the employee's permanent partial disability benefits, or (2) five hundred twenty weeks. Additional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state." General Statutes § 31-308a (a).

In the present case, neither party claims that the statute unambiguously indicates whether the commissioner properly could award § 31-308a benefits on the basis of the § 31-308 (b) disability benefits that the plaintiff received for her first injury. Indeed, notably, neither the parties nor the commissioner or the board has cited *any* language in § 31-308a in advancing their view of the merits of the issue in this case.

Our review of the statute leads us to conclude that the issue cannot be resolved by resort to the statutory text alone. We first observe that the statutory text makes it difficult to characterize the precise nature of the benefits in question. We previously have recognized a distinction between benefits awarded under the act to compensate for wage loss and those awarded to compensate for the loss, or loss of use, of a body part. See *Rayhall* v. *Akim Co.*, 263 Conn. 328, 349–51, 819 A.2d 803 (2003); see also 4 A. Larson & L. Larson, Workers' Compensation Law (2004) § 80.04, p. 80-13 ("[p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached, and ignore wage loss entirely"). Total or partial incapacity benefits fall into the first category. See General Statutes §§ 31-307 and 31-308 (a). Disability benefits, also referred to as specific indemnity awards or permanency awards, fall into the second category. See General Statutes § 31-308 (b). Benefits under § 31-308a, however, varyingly have been referred to as partial incapacity benefits; see *Starks* v. *University of Connecticut*, supra, 270 Conn. 9; *Rayhall* v. *Akim Co.*, supra, 350; partial permanent disability benefits; see *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 74, 676 A.2d 819 (1996); *Civardi* v. *Norwich*, 231 Conn. 287, 291 n.4, 649 A.2d 523 (1994); *Crocetto* v. *Lynn Development Corp.*, 223 Conn. 376, 379, 612 A.2d 1212 (1992); or more generically as either discretionary benefits; see *Rinaldi* v. *Enfield*, 82 Conn. App. 505, 509, 844 A.2d 949 (2004); or supplemental benefits. See *Smedley* v. *Dept. of Mental Retardation*, supra, 270 Conn. 36. The statutory text of § 31-308a reflects all of these components. The statute refers to "additional compensation benefits for such partial permanent disability" after the exhaustion of a disability award, which suggests that the benefits are disability benefits further compensating for the specific loss of use of a body part. Entitlement to benefits under

§ 31-308a, however, is predicated on a loss of earnings and provides benefits based on a wage differential, like incapacity benefits, rather than the fixed benefit provided for disability benefits. Compare General Statutes § 31-308a (75 percent of difference between wages earned before and after injury) with General Statutes § 31-308 (b) (75 percent of average weekly wages). The appropriate characterization of this benefit is significant in that, to the extent that the benefit is intended in whole or in part to provide incapacity benefits post-disability, the legislature reasonably could have intended to provide benefits under § 31-308a for successive injuries that cumulatively cause the incapacity.

We further observe that, although § 31-308a provides compensation for "the injury" that caused the claimant's loss of earnings, it also provides that the maximum duration of § 31-308a benefits for that injury cannot exceed the lesser of (1) the duration of the disability benefits, or (2) 520 weeks. The legislature's implicit recognition that the disability benefits on which § 31-308a benefits may be based could exceed 520 weeks evidences that it could not have intended to limit § 31-308a benefits to a single disability to a body part. It is not possible to obtain a disability award in excess of 520 weeks for a single injury.[9] Accordingly, the legislature may have intended § 31-308a benefits for "the injury" to permit an award either on the basis of injuries to more than one body part arising from a single acci-

---

[9] There are two body parts for which disability benefits theoretically may be awarded for a period equal to 520 weeks—the heart and the brain—and the maximum award would require 100 percent loss, or loss of use, of either organ. See General Statutes § 31-308 (b). Because such an injury would result in death, the maximum number of weeks cannot be awarded. Accordingly, one cannot receive disability benefits equal to, or in excess of, 520 weeks for a single injury. We also note that our research has revealed no case in which a claimant has been awarded disability benefits under § 31-308 (b) for a period in excess of 520 weeks for a single accident that caused injury to multiple body parts.

dent or on the basis of successive injuries arising from more than one accident, as long as those injuries caused a loss of earnings. See generally General Statutes § 1-1 (f) ("[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular"). Accordingly, in light of these ambiguities, we turn to the statute's genealogy, history and application to determine the legislature's intent.

Section 31-308a was enacted in 1967. See Public Acts 1967, No. 842, § 25.[10] The statute as originally enacted essentially mirrors subsection (a) of the current statute, with the exception of the duration limit and the requirement that the claimant be willing and able to work in this state.[11] Thus, when enacted, the statute set forth the same precondition for an award—the exhaustion of a § 31-308 (b) disability award—and provided the same type of wage differential benefits. The original statute also required the commissioner, in exercising his or her discretion to award benefits, to consider the same factors that must be considered under the present

---

[10] Public Acts 1967, No. 842, § 25, provides in relevant part: "In addition to the compensation benefits provided by section [31-308] for specific loss of a member or use of the function of a member of the body, or any personal injury covered by chapter 568 of the general statutes . . . the commissioner, after such payments provided by said section [31-308] have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to the difference between the average weekly earnings of the employee and the weekly amount which the employee will probably be able to earn thereafter, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not more than the maximum provided in section [31-310]. If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner."

[11] The percentage of the wage differential calculation also differs from the current version of § 31-308a. Compare footnotes 1 and 10 of this opinion.

version of the statute: "the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age . . . ." Public Acts 1967, No. 842, § 25; General Statutes § 31-308a (a). As in the present version, the original statute provided that "[t]he duration of such additional compensation shall be determined upon a similar basis by the commissioner." Public Acts 1967, No. 842, § 25. Thus, the same factors were relevant in determining the duration of the award and entitlement to benefits, with no maximum duration prescribed.

The legislative history to the 1967 act indicates that the statute was intended to achieve an equitable result based on the individual claimant's needs. Specifically, Representative Paul Pawlak, Sr., who spoke in the debate in the House of Representatives on proposed House Bill 2161 on behalf of the Labor Committee, explained with respect to § 25: "This section gives the commissioners authority to provide additional payments to workers who have exhausted their specific benefits, based upon the employee's injury, the availability of work for persons with such disability and the employee's training, education, experience and age. We have pointed out earlier that the present law with its specific payments for injuries does not at all times take into account that each man is a separate being and no one formula can be applied to determine what his true damages have been. This section gives the commissioners leeway to apply equity to the case, whereas under the present law, [they] could not do so. This may be a difficult section to administer but we believe that the experience of our commissioners will provide them with guidance so as to protect the injured worker more fully than we have in the past." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4043.

Thus, under this section, it was left entirely to the commissioners' discretion to determine the entitlement to and duration of the award by applying specified factors, with that decision reversible only for an abuse of discretion. *Bowman* v. *Jack's Auto Sales*, 54 Conn. App. 289, 295, 734 A.2d 1036 (1999); see *Siebold* v. *Helicopter Support, Inc.*, 4392 CRB-3-01-5 (September 6, 2002) ("[A]n award of § 31-308a benefits is discretionary, meaning that a trier's decision will be left intact unless it amounts to an abuse of discretion. . . . In general, as long as the trier has considered the criteria listed in § 31-308a before reaching his decision, and has kept his focus on the claimant's earning capacity, this board will not tamper with his judgment." [Citations omitted.]). It was not uncommon for commissioners to award benefits for a duration in excess of a claimant's prior disability award, with that decision resting on the claimant's loss of earning capacity resulting from that disability. See, e.g., *Smedley* v. *Dept. of Mental Retardation*, supra, 270 Conn. 35–36 (130 weeks of § 31-308 [b] benefits; 165 weeks of § 31-308a benefits); *Starks* v. *University of Connecticut*, supra, 270 Conn. 4–5 (130 weeks of § 31-308 [b] benefits; 195 weeks of § 31-308a benefits); *Iannarone* v. *Dept. of Mental Retardation*, 4138 CRB-7-99-10 (June 15, 2001) (100 to 110 weeks of § 31-308 [b] benefits; 169 weeks of § 31-308a benefits). In addition, the commissioners were permitted to award supplemental § 31-308a benefits after initial § 31-308a benefits had been exhausted if, in their measured judgment, the circumstances warranted additional compensation. See, e.g., *Smedley* v. *Dept. of Mental Retardation*, supra, 42 (remanding case to board for recalculation of plaintiff's second § 31-308a benefits award); *Brown* v. *State*, 4748 CRB-6-03-11 (October 18, 2004) (commissioner had not abused discretion in declining to award supplemental § 31-308a benefits in light of his findings); see also *Perri* v. *Mitchell Motors*,

3259 CRB-6-96-1 (June 24, 1997) ("Section 31-308a indeed allows the commissioner discretion to determine the duration of an award. We have also stated that, based on that discretion, the trier may state that an award of additional benefits would be subject to a substantial change in the claimant's condition. . . . However, a commissioner cannot be sure that a claimant will or will not merit § 31-308a benefits in the future, as that issue is not yet before him. By definition, his future condition is unknown, and a commissioner is only empowered to decide how much compensation is appropriate given the condition of the claimant at the time of the proceedings." [Citation omitted.]).

It is particularly relevant that the commissioners, in applying the original version of the statute in cases wherein a loss of earning capacity followed successive injuries, specifically considered the prior injuries as a factor in determining entitlement to an award. See, e.g., *DiBello* v. *Barnes Page Wire Products*, 4290 CRB-7-00-9 (September 25, 2001) (§ 31-308a benefits awarded for period equivalent to duration of disability award for two successive injuries; case remanded for findings on loss of earning capacity); *Borden* v. *New Britain Anesthesia*, 3408 CRB-06-96-08 (June 4, 1998) (apportioning § 31-308a benefits for four successive and separate injuries to claimant's back among insurers for relevant periods);[12] *Petta* v. *Waterbury Hospital*, 1310 CRD-5-

---

[12] The board's conclusion in *Borden* that apportionment was proper was based on the Appellate Court's holding in *Fimiani* v. *Star Gallo Distributors, Inc.*, 48 Conn. App. 474, 480–81, 710 A.2d 1374 (1998). *Borden* v. *New Britain Anesthesia*, supra, 3408 CRB-06-96-08. Subsequent to the board's decision, this court reversed the Appellate Court's judgment in *Fimiani*, concluding that the second injury fund was not entitled to seek apportionment against the other insurers in accordance with the percentage of the permanency attributable to the earlier injuries. See *Fimiani* v. *Star Gallo Distributors, Inc.*, supra, 248 Conn. 651. For reasons that we set forth later in this opinion, the reasoning in *Borden* that it was appropriate to award benefits on the basis of all the successive injuries is not undermined by the unavailability of apportionment.

91-9 (August 23, 1993) ("[w]hether the October 21, 1980 injury in combination with the September 22, 1983 injury resulted in a disability entitling her to [§] 31-308a benefits is a factual determination"); *Matteson* v. *American Standard, Inc.*, 1216 CRD-2-91-4 (May 4, 1993) (commissioner did not abuse discretion in denying § 31-308a benefits to worker suffering loss of earnings capacity after second injury when no incapacity followed first injury and second injury was not work-related and noncompensable); see also *Brown* v. *State*, supra, 4748 CRB-6-03-11 (affirming denial of additional § 31-308a award based on pre-1993 injuries because commissioner properly could have found that claim for § 31-308a benefits principally was based on second injury to hand, not first injury to knee, and there was no evidence that loss of earnings was caused by hand injury). In these cases, the commissioners, and the board in turn, considered in each instance whether the prior disability was a contributing factor in the claimant's current physical condition that impaired his or her earning capacity.

In 1993, the legislature amended § 31-308a to add the following emphasized language: "(*a*) . . . The duration of such additional compensation shall be determined upon a similar basis by the commissioner, *but in no event shall the duration of such additional compensation exceed the lesser of (1) the duration of the employee's permanent partial disability benefits, or (2) five hundred twenty weeks. Additional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state.*

*"(b) Notwithstanding the provisions of subsection (a) of this section, additional benefits provided under this section shall be available only when the nature of the injury and its effect on the earning capacity of an employee warrant additional compensation.*" Public Acts 1993, No. 93-228, § 20 (P.A. 93-228). Thus, under

§ 31-308a, as amended, the commissioners' discretion was circumscribed in determining the duration of the award and in awarding benefits to persons who either had left the state or whose disability had not in fact affected earning capacity. See, e.g., *McEnerney* v. *United States Surgical Corp.*, 4252 CRB-3-00-6 (10-16-2001) ("if at some point during her period of eligibility for § 31-308a benefits, the claimant ceases to be available for work in the state of Connecticut, she is thereupon pre-empted from continuing to collect said benefits"). The legislature did not alter, however, the language requiring the commissioners to consider, inter alia, the claimant's physical condition, which the commissioners had construed to allow them to consider successive injuries in determining both entitlement to and duration of § 31-308a benefits.

While it is clear that the 1993 amendment limited the commissioners' prior unfettered discretion, the legislative history to that amendment sheds no light as to whether, by retaining the other entitlement and duration factors but adding the durational limit, the legislature intended to deprive the commissioners of the discretion they previously had exercised to consider a prior disability. The legislature's general intent in enacting P.A. 93-228, which was a comprehensive scheme to reform the act, however, is well documented. "[T]he principal goal of [the act was] cutting employers' costs in maintaining the workers' compensation system." *Pasquariello* v. *Stop & Shop Cos.*, supra, 281 Conn. 661; accord *Rayhall* v. *Akim Co.*, supra, 263 Conn. 346 ("the principal thrust of these reforms was to cut costs in order to address the spiraling expenses required to maintain the system"). Although we are mindful that construing § 31-308a to preclude the commissioners from considering a prior disability would impose the least cost on employers, that factor alone does not dictate our conclusion if the result is not mandated by

clear statutory language and is inconsistent with the broader remedial purpose of the statute. See *Rayhall* v. *Akim Co.*, supra, 357–58.

In the present case, we conclude that the legislature did not evidence a clear intent to preclude the commissioners from awarding § 31-308a benefits for a prior disability when that disability is a substantial factor in causing the claimant's loss of wages. It would be inconsistent with the equitable intent of this provision and our liberal rules of construction to deny the plaintiff benefits based on her first disability award when, but for that disability, it is evident that the plaintiff would not have suffered a loss of earning capacity from the second injury alone. The plaintiff's 5 percent additional impairment to her back was the tipping factor in her incapacity following the combined 25 percent impairment caused by the two successive injuries. To paraphrase a familiar idiom, it was "the straw that broke the [plaintiff's] back." We cannot rationalize why the legislature would have intended to preclude the commissioners in such cases from continuing to exercise their reasoned discretion in determining whether a prior disability was a substantial cause of the incapacity and in awarding benefits on the basis of that injury.[13] The act recognizes that "the combined effect of a successive injury to someone with a preexisting disability can far exceed the combined allowances for each injury existing separately." (Internal quotation marks omitted.) *Halt* v. *Burlington Coat Factory*, supra, 263 Conn. 301.

It appears that the board's reliance on its decision in *Houghton* v. *Andover*, supra, 4949 CRB-2-05-6, and the defendant's reliance on this court's apportionment

---

[13] In this regard, we ascribe no particular significance to the fact that the plaintiff sought § 31-308a benefits for the first disability after exhausting those benefits for the second disability, rather than seeking § 31-308a benefits for both injuries at the same time. See footnote 7 of this opinion.

decisions in *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 279, and *Fimiani* v. *Star Gallo Distributors, Inc.*, supra, 248 Conn. 635, as a basis for denying benefits in this case are predicated on a fundamental misconception of the effect of the availability of apportionment on entitlement to benefits.[14] As best we can ascertain, they appear to assert that, because the § 31-308a benefit could not be apportioned to another employer had the plaintiff been employed by different employers at the

[14] We question the board's interpretation of *Houghton* v. *Andover*, supra, 4949 CRB-2-05-6, a decision that was rendered subsequent to the 1993 amendment to § 31-308a adding the duration limit by different board members than those in the present case. In *Houghton*, the claimant had sustained two separate injuries to his back. Following surgery for the first injury, the claimant was assessed as having a 15 percent permanent partial impairment for which he received 56.1 weeks of disability benefits. The claimant returned to his usual employment and thereafter sustained a second back injury that resulted in an additional 6 percent permanent disability, for which he was paid 22.44 weeks of disability benefits. The claimant was not able to return to his usual employment after the second injury and sought additional benefits under § 31-308a.

As the board's opinion in *Houghton* explains: "The trial commissioner then found the claimant was entitled to 78.54 weeks of § 31-308a benefits and liability for those benefits was to be apportioned between the [insurer at the time of the first injury] and [the insurer at the time of the second injury]. The [first insurer] was liable for 56.1 weeks of § 31-308a benefits at a rate of $249.60 per week. The [second insurer] was liable for 22.44 weeks of § 31-308a benefits at a rate of $290.44." Id. The first insurer appealed, claiming that the commissioner improperly had apportioned the § 31-308a benefits to it. The board concluded that, under this court's decisions in *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 279, and *Fimiani* v. *Star Gallo Distributors, Inc.*, supra, 248 Conn. 635, apportionment was not available because the second injury was a separate injury, rather than a aggravation of the preexisting injury. The board stated in conclusion: "We therefore conclude that part of the commissioner's May 26, 2005 Finding and Award apportioning the claimant's award of § 31-308a benefits between the [insurers] must be reversed and sole liability for the payment of § 31-308a benefits is the responsibility of the [second insurer]." *Houghton* v. *Andover*, supra, 4949 CRB-2-05-6. The board never stated that the claimant was not entitled to the 78.54 weeks of § 31-308a benefits; it simply held that the claimant's benefits could not be apportioned and that the sole liability for the payment of § 31-308a benefits rested with the second insurer. Accordingly, we construe this case as one in which the board did permit an award of § 31-308a benefits on the basis of a first injury.

time of each injury, the plaintiff should not be able to obtain benefits based on the first injury simply because she worked for the same employer at the time of each injury. We agree with the board and the defendant that it is irrelevant, for purposes of determining whether the plaintiff is entitled to benefits in this case, that the same employer is responsible for benefits payable under the act for both injuries. Although, when there is a claim for apportionment between multiple employers or insurers, a question arises as to whether an employer (or insurer) responsible for compensation for a preexisting injury may be held responsible for payment of benefits that subsequently accrue because of a second injury; see, e.g., *Hatt* v. *Burlington Coat Factory*, supra, 298; *Mages* v. *Alfred Brown, Inc.*, 123 Conn. 188, 192–95, 193 A. 780 (1937); *Plecity* v. *McLachlan Hat Co.*, 116 Conn. 216, 221–29, 164 A. 707 (1933); we are unaware of any authority holding that the threshold determination of the employee's *entitlement* to benefits depends on whether the injuries occurred while the employee worked for different employers. Similarly, however, irrespective of whether apportionment is available, that fact does not affect the threshold question of whether an employee is entitled to benefits in the first instance. In other words, an employee's entitlement to compensation is the threshold question and that entitlement is unaffected by the subsequent determination of whether that compensation may be apportioned among multiple employers or insurers. See *Levanti* v. *Dow Chemical Co.*, 218 Conn. 9, 17, 587 A.2d 1023 (1991) ("[General Statutes §] 31-349 does not create liability. To the contrary, it is an apportionment statute that limits the liability of employers previously imposed."), overruled in part on other grounds by *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 677 A.2d 1356 (1996).

In *Fimiani* v. *Star Gallo Distributors, Inc.*, supra, 248 Conn. 651, in which a claim arose while the second

injury fund still was open, we explained: "[Section] 31-349 (a) requires the employer at the time of a claimant's second injury to accept liability for *all* of the compensation benefits due the claimant for a period of 104 weeks. Thereafter, § 31-349 requires the fund to accept liability for *all* of the benefits due the claimant for the combined injuries. Section 31-349 further requires that, in calculating the amount of benefits due the claimant, a deduction be taken for any permanent disability benefits the claimant already is entitled to recover for his first injury pursuant to [General Statutes] §§ 31-308 (b), 31-309 and 31-295 (c)."[15] (Emphasis added.) In *Hatt* v. *Burlington Coat Factory,* supra, 263 Conn. 308, which addressed a second employer's request for apportionment after the second injury fund was closed to such claims, this court noted that the "[t]he legislative history indicates that, on closing the second injury fund to new claims, the legislature contemplated the second injury employer or its insurer remaining solely liable for the consequences of the second injury." The court reiterated that "[u]nder *Fimiani,* the first employer or its insurer simply bears no responsibility for the consequences of the second injury." Id.

Under this reasoning, a claimant who becomes totally or partially incapacitated (suffers total or partial wage loss) because of the cumulative effect of a preexisting disability and a subsequent disability is entitled to receive incapacity benefits under § 31-307 or § 31-308 (a) from the second employer because that incapacity is a consequence of the second injury. See *Fimiani* v. *Star Gallo Distributors, Inc.,* supra, 248 Conn. 641–51 (analyzing second injury fund's liability for total or par-

---

[15] We note that the deduction of benefits that *Fimiani* refers to for "permanent disability benefits the claimant already is entitled to recover for his first injury"; *Fimiani* v. *Star Gallo Distributors, Inc.,* supra, 248 Conn. 651; is intended to prevent double recovery and thus would not apply even if benefits under § 31-308a were deemed disability benefits, a characterization that we reject.

tial incapacity following second injury); *Rogulski* v. *UTC/Pratt & Whitney Aircraft Employer*, 2113 CRB-2-94-7 (April 1, 1996) ("it is manifest that periods of total disability and partial disability under §§ 31-307 and 31-308 [a] fall within [the] definition" of disability payments that may be transferred to second injury fund under § 31-349). We can glean no appreciable difference between those situations and one in which a claimant seeks § 31-308a benefits for a loss of earning capacity caused by the combined effect of two separate disabilities. See *Civardi* v. *Norwich*, 1376 CRB-2-92-1 (February 28, 1994) (employer had standing to challenge award of § 31-308a benefits transferred to second injury fund), aff'd, 231 Conn. 287, 649 A.2d 523 (1994).

To the extent that the defendant's argument rests on the premise that § 31-308a benefits are disability benefits and thus *any* benefits for the first injury must be deemed a consequence of the first injury, rather than the second injury, we disagree. This court recently relied on the "inherent difference" between § 31-308 (b) disability awards and § 31-308a awards in construing § 31-308a. *Starks* v. *University of Connecticut,* supra, 270 Conn. 23 n.19. The court deemed § 31-308a benefits essentially the postdisability analogue to § 31-308 (a) partial incapacity benefits. Id., 23–24 n.19; see also *Fox* v. *New Britain General Hospital*, 4414 CRB-6-01-7 (August 6, 2002) ("As for the two awards of temporary partial disability benefits [one pre-specific indemnity, one post-specific indemnity], both legally depend upon the claimant having suffered a loss in her earning capacity as a result of her compensable injury. See [General Statutes §§ 31-308 (a) and 31-308a]."); A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2005) § 6.06, p. 951 ("The two types of temporary partial [incapacity] benefits provided within [c]hapter 568 are found at [§] 31-308 [a] and [§] 31-308a. [Section] 31-308 [a] benefits or 'pre-specific' are awarded before the

injured worker is eligible to receive or has been paid his or her [§] 31-308 [b] permanent partial impairment benefits, while [§] 31-308a benefits or 'post-specific' are awarded after the injured worker's eligibility to receive [§] 31-308 [b] benefits has been established and exhausted."). Indeed, the alternative maximum duration of benefits under § 31-308a of 520 weeks is the same maximum duration prescribed for partial incapacity benefits under § 31-308 (a).

Ultimately, we must determine whether the legislature intended to provide benefits under § 31-308a for successive injuries, when the cumulative effect of those injuries has caused incapacity. Admittedly, we must reach a decision without clear direction from the text or legislative history of the statute. Given, however, the equitable purpose of § 31-308a benefits and the board's case law considering successive injuries when rendering § 31-308a awards, we conclude that, when a prior disability is a substantial cause of the loss of earning capacity that a claimant suffers after a second disability, the commissioner may consider both disability awards in determining entitlement to and duration of a § 31-308a award.

The decision of the compensation review board is reversed and the case is remanded to the board with direction to affirm the commissioner's decision.

In this opinion the other justices concurred.