MEMORANDUM OF DECISION
GUERNSEY, C.J.
Following the Trial Commissioner’s issuance of Finding of Facts, Award in Part/Dismissal in Part dated August 9, 2012, the Claimant filed a Motion for Rear-gument or Articulation, which was denied by the Commissioner on grounds that the instant appeal filed in the Gaming Disputes Trial Court stayed all further action by the Mohegan Tribal Workers Compensation Commission. In order to allow the Commissioner to hear his request for rear-gument and to rule on his Motion for Articulation, the Claimant/Appellant filed with this Court the instant Motion for Articulation and Request to Vacate Stay.
Claimant’s original Motion for Reargument or Articulation addressed two issues: a requested reargument on the denial of benefits during the period following Claimant’s laparoscopic gastric band surgery, and articulation as to how the anticipated disability rating (after Claimant reaches maximum medical improvement) will address Claimant’s previous disability. The motion addressed to this Court added a third issue, dealing with the duration of “post disability” benefits under MTC § 4-233 [1]. Inasmuch as Claimant apparently has not been rated for permanent partial disability following his most recent surgery, *22 [2] the issues of permanent partial disability benefits and post disability benefits arguably were not before the Commissioner at the time of his decision. Nevertheless, the Commissioner’s Finding and Award addressed these issues -with the laudable goal of bringing some finality to a complex and highly contested matter.

FACTUAL BACKGROUND

As set forth in the comprehensive decision of the Trial Commissioner, the Claimant has suffered two compensable injuries, occurring May 11, 2003 and May 1, 2005, both while in the employ of the Respondent.[3] On February 2, 2007, the authorized treating physician, Dr. Michael Halpe-rin, issued the Claimant an impairment rating of 27%, attributing 15% to pre-exist-ing conditions and thus attributed 12% to the injury of May 1, 2005, the subject of the instant claim for compensation.[4] Claimant thereafter underwent a left-sided hemilaminectory on March 13, 2008, followed by transforaminal steroid injections in June-July, 2008. Dr. Halperin initially agreed to perform an L3-4 discectomy, but in September, 2008 decided otherwise. Discography in October revealed severe disc degeneration at L3-4, L4-5, with an L4 facet fracture on the left, as well as lateral recess stenosis and spondylosis at those levels.[5]
Throughout the course of his treatment Claimant’s muscular build and weight were considered substantial factors by virtually every physician in this case, with Dr. Halperin at one point opining that Claimant “is what I would consider to be a surgical nightmare at this point because he is just so large and muscular, he has had prior surgery and has scarring.”[6] On June 11, 2009 the Claimant underwent la-paroscopic placement of an adjustable gastric band to promote weight loss.[7] Thereafter, on January 2, 2011, Dr. Halperin performed an L5-S1 fusion and laminecto-my at L3-4, L4-5, with osteotomy, facetec-tomy, and transforaminal lumbar inter-body fusion. At that point Claimant’s weight had been reduced from 363 pounds to approximately 300 pounds. As far as the record indicates, Claimant is not at maximum medical improvement and consequently has not been re-evaluated for permanent impairment following the additional lumbar surgery.[8]

DISCUSSION

Claimant seeks reargument or articulation of the Commissioner’s Finding *23 U, which held that while Claimant’s presumably erroneous belief that Dr. Halpe-rin required that he undergo gastric band surgery prior to additional lumbar surgery did not rise to the level of a refusal to accept or obtain reasonable medical and surgical treatment, in light of the opinions expressed by Dr. Halperin on the desirability of Claimant losing weight, the lapa-roscopic gastric band surgery nevertheless was not a reasonable or necessary medical expense causally related to the work-related injury of May 1, 2005. This Court is unable to identify any part of the record or the Commissioner’s Findings that would suggest that reargument would be anything other than the presentation of the issues already considered by the Commissioner, and which are properly before this Court in the instant appeal.
As for articulation with respect to Finding U, if the Trial Commissioner’s Finding contained some ambiguity or deficiency reasonably susceptible or clarification, this would be appropriate. State v. Wilson, 199 Conn. 417, 434-35, 513 A.2d 620 (1986), Vitone v. Mohegan Tribal Gaming Authority, GDCA-T-10-500 (November 3, 2010). A review of Findings T and U indicate that the Commissioner clearly and succinctly stated the reasons for his conclusions, with the issues properly presented for consideration on appeal. In such a case, where articulation would be neither helpful nor necessary, the same should be denied. Vitone, supra.
A different situation is presented with respect to benefits not yet capable of calculation, ie., Compensation for Partial Incapacity under MTC § 4-232 and Additional Benefits for Partial Permanent Disability under MTC § 4-233, and the parties are in agreement that articulation would be helpful.
With respect to these benefits, the Commissioner’s orders[9] read as follows:
g. The Respondent-Employer, Mohegan Tribal Gaming Authority d/b/a Mohegan Sun Casino shall pay to the Claimant, William C. Burnett, II, any additional permanent-partial disability benefits ascribed to the Claimant’s low back which are causally related to the May 1, 2005 work injury once Claimant has reached maximum medical improvement.
h. Any additional discretionary benefits ordered paid by the Respondent-Employer, Mohegan Tribal Gaming Authority d/b/a Mohegan Sun Casino to the Claimant, William C. Burnett, II, for partial permanent disability, pursuant to Mohegan Workers Compensation Law Section 4-233, shall be limited in duration not to exceed the lesser of (1) the duration of the employee’s permanent-partial disability benefits paid under Mohegan Workers Compensation Law Section 4-232 which benefits are causally related to Claimant’s work injury of May 1, 2005; or (2) five hundred and twenty (520) weeks.
Claimant seeks articulation with respect to the calculation of permanent partial disability, arguing (correctly) that “he is of the understanding that whenever an award for permanent partial disability is made that the full disability rating is ordinarily attributed to an injury with a credit for disability ratings previously paid or assessed with regard to “previous *24 disability.”[10] An injured worker is generally entitled to the full permanent partial impairment award even if part of such impairment is due to a pre-existing condition. A significant qualification to this principle has been described as follows:
However, if the injured worker has already been assigned a, permanent partial impairment rating for the previous injury or illness (whether it be work-related or due to a non-work-related injury or illness for which recovery may be had) then the insurance carrier on the risk at the time of the subsequent injury is liable only for any increase in previously assigned permanent partial impairment which was paid or payable with respect to that previous injury, (emphasis in original).
CONNECTICUT WORKERS COMPENSATION AFTER REFORM, Sevarino, A.P., 3rd Ed., § 6.08.9 (2005). In the instant case, the wording of the Commissioner’s order (arguably) is not clear as to whether the pre-existing impairment of 15% was assigned to the prior injury. The Court is not certain that this presents an issue, given the apparent clarity of Dr. Halperin’s opinion that Claimant had a pre-existing disability of 15% of the lumbar spine as a result of the “prior lumbar discectomy” (presumably this is the “right-sided hemilaminectomy and disc excision” performed by Dr. Halperin on August 18, 2003 as a result of the May 11, 2003 work related injury). However, the parties seem to be in agreement that clarification of what prior disability rating was assigned to the Claimant and is to be deducted from a global rating, if indeed that is what is eventually given, would be helpful.
As for the issue of discretionary additional benefits under MTC § 4-233 (the issue actually addressed by Paragraph h), it appears that the order imposes a duration limitation that is in conflict with Connecticut law dealing with benefits under MTC § 4-233's state law counterpart, Conn. Gen.Stat. § 31-308a, in situations where there are two disability awards. In Pizzuto v. Commissioner of Mental Retardation, Et Al., the Connecticut Supreme Court not only rejected the characterization of § 31-308a benefits as “disability benefits,” but further held:
[Wjhen a prior disability is a substantial cause of the loss of earning capacity that a claimant suffers after a second disability, the commissioner may consider both disability awards in determining entitlement to and duration of a § 31-308a award.
Pizzuto v. Commissioner of Mental Retardation, Et Al., 283 Conn. 257, 280, 927 A.2d 811 (2007). Viewed in this light, it cannot be determined whether the limitation imposed by Paragraph h, that such benefits “shall be limited in duration not to exceed the lesser of (1) the duration of the employee’s permanent-partial disability benefits paid under the Mohegan Workers Compensation Law Section 4-232 which benefits are causally related to Claimant’s work injury of May 1, 2005; or (2) five hundred and twenty (520) weeks” (emphasis added) was an exercise of the Commissioner’s discretion under MTC § 4-233 or a determination that the Pizzuto holding was not applicable, possibly in light of the reference to MTC § 4-232, which was not yet enacted as of the date of Claimant’s initial injury.[11]
*25 Generally speaking, future post-disability benefits are not susceptible to computation. As described by the Connecticut Supreme Court, quoting the Compensation Review Board:
However, a commissioner cannot be sure that a claimant will or will not merit § 31-308a benefits in the future, as that issue is not yet before him. By definition, his future condition is unknown, and a commissioner is only empowered to decide how much compensation is appropriate given the condition of the claimant at the, time of the proceedings.
Pizzuto, supra, 283 Conn. at 272, 927 A.2d 811, quoting Perri v. Mitchell Motors, 3259 CRB-6-96-1 (June 24, 1997). Read literally, the Commissioner’s award certainly followed this principle: Paragraph h did not award post-disability benefits; rather it set a limitation on the possible duration of such benefits. It appears that the likely intention was to allow the continued payment of benefits to Claimant without interruption and the recognition that at some point such payments would be reclassified from § 4-232 to § 4-233 benefits. Nevertheless, the intention and reasoning behind the Commissioner’s limitation in this respect are unclear. “[P]roper utilization of the motion for articulation serves to dispel any ... ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal.” Cable v. Bic Corporation, Et Al., 270 Conn. 433, 444-45, 854 A.2d 1057 (2004), quoting Alliance Partners, Inc. v. Oxford Health Plans, Inc., 263 Conn. 191, 204, 819 A.2d 227 (2003).
Claimant’s Motion for Reargument is denied. Claimant’s Motion for Articulation and Request to Vacate Stay is granted to the extent that the matter is remanded to the Commissioner for articulation of the following:
a. Whether the award set forth in Paragraph g of permanent partial disability benefits “which are causally related to the May 1, 2005 work injury” intended that a global disability rating be reduced by the prior disability rating of 15%, or any other prior disability rating, assigned by Dr. Halperin in Claimant’s Exhibit A.2.ff or otherwise;
b. The legal basis for, and intention behind, the limitation on the duration of MTC § 4-233 benefits set forth in Paragraph h.

. The Connecticut Supreme Court has rejected the characterization of benefits under Conn. Gen.Stat. § 3 l-308a, the State counterpart to MTC § 4-233, as “disability benefits," construing them as “the post-disability analogue to § 31-308(a) partial incapacity benefits.” Starks v. University of Connecticut, 270 Conn. 1, 23-24 n. 19, 850 A.2d 1013 (2004), quoted in Pizzuto v. Commissioner of Mental Retardation, Et Al., 283 Conn. 257, 279, 927 A.2d 811 (2007).

. See fn. 7.

. The first injury was adjudicated in the State Workers Compensation system.

. As described in Commissioner's Finding No. 33. The actual wording of Dr. Halperin’s rating was more specific:
"... I would issue Mr. Burnett a 27% impairment of the lumbar spine, (emphasis in original). This should be apportioned 15% due to a pre-existing condition (prior lumbar discectomy, and 12% due to the work related injury that occurred in May of 2005.” (sic, parenthesis not closed in original).
Claimant’s Exhibit A.2.ff.

. Finding No. 47-51.

. Finding No. 52.

. The issues of whether Dr. Halperin declined to perform lumbar surgery due to Claimant's weight, and whether Claimant refused appropriate medical treatment until after the lapa-roscopic band surgery, form the basis for Claimant’s request for reargument.

. As set forth in Finding R, Dr. Halperin stated in his letter to the Commission dated August 25, 2010 that Claimant would not be at maximum medical improvement until one year post surgery. It would thus appear that the disability rating is imminent, if not already done.

. Claimant consistently refers to the order dealing with Compensation for Partial Incapacity as "H” (sic); however, it seems clear that the Commissioner's orders concerning specific compensation are set forth in "g” (notwithstanding the confusing reference therein to “any additional permanent-partial disability benefits") and the orders concem-ing post disability or § 4-233 benefits are set forth in "h.”

. See Claimant's Motion for Reargument or Articulation dated August 29, 2012.

. The prior award presumably was paid pursuant to Connecticut law under the State Workers Compensation System. MTC § 4-232 was enacted on August 11, 2004, and it is not at all clear that it was the intention of the Tribal Council to exclude payments made under prior law (i.e., Conn. Gen.Stat. § 31- *25 308(b)) from the computation of the maximum period of post-disability benefits under MTC § 4-233.