RICHARD A. HOGBERG ET AL. *v.* DEPARTMENT
OF SOCIAL SERVICES
(AC 30720)

Lavine, Beach and Lavery, Js.

Argued January 8—officially released September 7, 2010

*Barry C. Knott*, with whom was *Kathleen M. Dunn*, for the appellants (plaintiffs).

*Darren P. Cunningham*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiffs, Lynda K. Hogberg and Richard A. Hogberg, appeal from the judgment of the trial court rendered in favor of the defendant, the department of social services (department). The dispositive issue on appeal is whether, pursuant to the department's Uniform Policy Manual, the defendant properly

determined that the medical conditions of Richard Hogberg did not constitute exceptional circumstances resulting in significant financial duress that would have warranted an increase in his minimum monthly needs allowance (allowance) under the medicaid program. See Department of Social Services, Uniform Policy Manual § 1570.25 (D) (3) (Uniform Policy Manual). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiffs' appeal. Lynda Hogberg, the institutionalized spouse,[1] has been residing at Milford Health Care Center since approximately September 1, 2004. On September 22, 2006, Richard Hogberg, the community spouse,[2] filed an application, on behalf of his wife, with the department for medicaid benefits. In an "Assessment of Spousal Assets, Notification of Results" issued on March 2, 2007, the department concluded that Lynda Hogberg was not currently eligible for medicaid assistance. Specifically, the department found that the total value of the plaintiffs' assets at the time of institutionalization was $817,406.71. The department found that Lynda Hogberg's share of the spousal assets was $718,866.71, and Richard Hogberg's share of the assets was $99,540. Consequently, because the maximum amount of the plaintiffs' retained assets exceeded the total of $101,140—the community spouse

[1] "An institutionalized spouse is a spouse who resides in a medical facility or long term care facility, or who receives home and community based services (CBS) under a Medicaid waiver, and who is legally married to someone who does not reside in such facilities or who does not receive such services." Uniform Policy Manual, § 4000.01; see also 42 U.S.C. § 1396r-5 (h) (1).

[2] "A community spouse is an individual who resides in the community, who does not receive home and community based services under a Medicaid waiver, who is married to an individual who resides in a medical facility or long term care facility or who receives home and community based services (CBS) under a Medicaid waiver." Uniform Policy Manual, § 4000.01; see also 42 U.S.C. § 1396r-5 (h) (2).

resource allowance of $99,540 plus $1600,[3] the limit for an institutionalized spouse's countable assets[4]—the department determined that Lynda Hogberg was ineligible for medicaid assistance.

On April 23, 2007, the plaintiffs requested an administrative hearing to contest the denial of the title XIX[5] medicaid application of Lynda Hogberg and the assessment of spousal income and assets.[6] At the hearing

[3] The community spouse resource allowance is defined as "the amount of the total available non-excluded assets owned by both [Medicare Catastrophic Coverage Act] spouses which is protected for the community spouse and is not counted in determining the institutionalized spouse's eligibility for medicaid." Uniform Policy Manual, § 1500.01.

[4] See Uniform Policy Manual, § 4005.10.

[5] "Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s, commonly known as the Medicaid Act, is a federal-state cooperative program designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of medical care." (Internal quotation marks omitted.) *Sikand* v. *Wilson-Coker*, 276 Conn. 618, 620, 888 A.2d 74 (2006). "General Statutes § 17b-2 (8) designates the department as the state agency responsible for administering the state's medicaid program." Id., 621.

[6] In addition to the community spouse resource allowance, a community spouse is entitled to an allowance. Uniform Policy Manual, § 5035.30 (B) (1). "If the community spouse's income from outside sources is insufficient to meet his [allowance], the institutionalized spouse is permitted to bridge this deficit by transferring income to the community spouse. . . . Because this increase in the resource allowance results from a transfer of resources from the institutionalized spouse to the community spouse, the value of the institutionalized spouse's resources is brought closer to the [medicaid] eligibility level." (Citations omitted.) *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 149–50, 691 A.2d 586 (1993).

A community spouse may obtain an increase in the allowance by requesting a hearing from the department. Section 1570.25 (D) (3) of the Uniform Policy Manual, which delineates the nonadministrative duties of a fair hearing official, provides in relevant part: "The [fair hearing] official increases the community spouse's [minimum monthly needs allowance] previously determined by the Department if either . . . spouse establishes that the community spouse has *exceptional circumstances* resulting in *significant financial duress*, and the [allowance] previously calculated by the Department is not sufficient to meet the community spouse's monthly needs as determined by the hearing official." (Emphasis added.)

Section 1570.25 (D) of the Uniform Policy Manual defines exceptional circumstances as "those that are severe and unusual and that: (1) prevent the community spouse from taking care of his or her activities of daily

held on May 17, 2007, the plaintiffs argued that Richard Hogberg suffered from four significant medical conditions—the removal and replacement with a plastic unit of a valve in his heart, thyroid removal, hiatal hernia and glaucoma—that constitute exceptional circumstances. According to the plaintiffs, these conditions require him to expend an extraordinary amount of money each month on prescription medications, medical insurance premiums, housekeeping and on yard work and snow removal expenses that are necessary to maintain his independence at home. Consequently, the plaintiffs claimed that Richard Hogberg's exceptional circumstances result in monthly expenses that exceed his income by a significant amount—hence, circumstances that are demonstrative of his significant financial duress.

As a final argument, the plaintiffs contended that if Richard Hogberg were denied the opportunity to pay for his prescriptions, he would be at an increased risk for hospitalization or the need for long-term care. Thus, they argued that his exceptional circumstances threatened his ability to remain in the community.

In a decision dated July 18, 2007, the hearing officer found the following facts. At the date of the hearing, the plaintiffs' remaining funds totaled $167,569.79,[7] and Richard Hogberg was seventy-one years old. On the basis of four reports from Richard Hogberg's treating physicians that were submitted as evidence, the hearing officer found that Richard Hogberg suffers from diabetes, hypertension, a hiatal hernia, glaucoma, hyperlipidemia and hypothyroidism. Moreover, his aortic valve

---

living; or (2) directly threaten the community spouse's ability to remain in the community; or (3) involve the community spouse's providing constant and essential care for his or her disabled child, sibling or other immediate relative (other than institutionalized spouse)."

[7] In September, 2004, the plaintiffs gifted $187,000 to their children. The penalty period associated with this gift had long since expired prior to the filing of the medicaid application.

has been replaced. Richard Hogberg takes the following medications due to his conditions: Synthroid, folic acid, Nexium, simvastatin, Travatan, Toprol, Diovan HCT and warfarin. Richard Hogberg is no longer able to do yard work, and his performing snow removal is not encouraged. In addition to yard work and snow removal services, he also pays for housekeeping services. The hearing officer found that if Richard Hogberg failed to take his medications, he would be at an increased risk of hospitalization or long-term care.[8] She also found that he "suffers from the normal frailties of old age and [that] his circumstances are not exceptional for a seventy-one year old individual."

After reciting the applicable regulations and the foregoing factual findings, the hearing officer denied the appeal, determining that Richard Hogberg did not qualify for a diversion of income from Lynda Hogberg's assets in order to provide him with a higher monthly income than his allowance. The hearing officer specifically concluded that there was "no evidence that [Richard Hogberg's] circumstances prevent him from taking care of his activities of daily living. I consider [him] to suffer from [the] normal frailties of an older individual and not to be exceptional. I do not consider the need for increased costs relating to medical insurance and prescription medications to be an exceptional expense." The hearing officer concluded that because Lynda Hogberg's assets exceeded the title XIX asset limit of $1600, she was ineligible for medicaid assistance. The plaintiffs requested reconsideration of the hearing officer's decision on August 1, 2007. The request was denied on August 13, 2007.

Pursuant to General Statutes § 4-183, the plaintiffs timely filed an administrative appeal with the court.

---

[8] There was no finding, however, that Richard Hogberg was unable to take his medications or was at an immediate risk of being unable to take his medications.

The court determined that the record supported the finding that Richard Hogberg did not demonstrate exceptional circumstances resulting in significant financial duress because his specific medical conditions were not severe and unusual, which are requirements under Uniform Policy Manual § 1570.25 (D) (3) (a). Additionally, the court also flatly rejected the plaintiffs' claim that Richard Hogberg's living situation falls under the purview of the "exceptional circumstances" provision because he suffers from significant medical conditions that require expenditures for prescriptions, medical insurance premiums, housekeeping and yard work and snow removal services at his home. In its memorandum of decision, the court noted that the "exceptional circumstances" provision was not intended to insure community spouses against indebtedness. Instead, the purpose of the provision is to provide additional income for those community spouses suffering from extraordinary or unusual circumstances that make it financially stressful to continue living independently in the community. On the basis of the Uniform Policy Manual,[9] the court disagreed with the plaintiffs' contention that exceptional circumstances mean any circumstances that generate expenses not provided for in the allowance. Rather, given the language and legislative history of 42 U.S.C. § 1396r-5 (e) (2) (B), the court stated that an increase in the allowance should be made available to alleviate a true financial hardship that is thrust upon the community spouse

---

[9] The Uniform Policy Manual provides that "[s]ignificant financial duress is an expense or set of expenses that . . . (2) is not already factored into the [allowance]; and (3) cannot reasonably be expected to be met by the community spouse's own income and assets." Uniform Policy Manual, § 1570.25 (D) (3) (b). The "[e]xpenses that are factored into the [allowance] . . . include, but are not limited to: (1) shelter costs such as rent or mortgage payments; (2) utility costs . . . (5) real estate, life and medical insurance; (6) expenses for the upkeep of a home such as lawn maintenance, snow removal, replacement of a roof, furnace or appliance; (7) medical expenses reflecting the normal frailties of old age." Uniform Policy Manual, § 1570.25 (D) (3) (c).

by extraordinary circumstances and is beyond the community spouse's control. This appeal followed.

The plaintiffs claim that the court failed to consider the reliable and substantial evidence in the record in concluding that Richard Hogberg's health did not constitute an exceptional circumstance. The plaintiffs argue that the medical documentation submitted at the hearing supports their claim that Richard Hogberg has a need for additional assets and a need for higher monthly income than is permitted by the allowance calculation. Specifically, they argue that this need is "due to his exceptional circumstances including, but not limited to his extensive and extraordinary medical conditions, costs of necessary medication, and other costs necessitated by his physical restrictions, all of which constitute exceptional circumstances resulting in significant financial duress to him because they directly threaten his ability to remain in the community."

Conversely, the department argues, inter alia, that because the hearing officer found that Richard Hogberg suffered from the " 'normal frailties of old age' " and that his circumstances were " 'not exceptional for a seventy-one year old individual'," the hearing officer, as a consequence, also found that his conditions were "neither 'unusual' nor 'severe' "—two required elements of "exceptional circumstances" under Uniform Policy Manual § 1570.25 (D). Because there is substantial evidence in the record to support this finding, the department argues that the judgment should be affirmed.

We begin our analysis by setting forth the appropriate standard of review. "[J]udicial review of the [department's] action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted." (Internal quotation marks omitted.) *Jim's*

*Auto Body* v. *Commissioner of Motor Vehicles*, 285
Conn. 794, 803, 942 A.2d 305 (2008). "[R]eview of an
administrative agency decision requires a court to deter-
mine whether there is substantial evidence in the admin-
istrative record to support the agency's findings of basic
fact and whether the conclusions drawn from those
facts are reasonable. . . . Neither this court nor the
trial court may retry the case or substitute its own
judgment for that of the administrative agency on the
weight of the evidence or questions of fact. . . . Our
ultimate duty is to determine, in view of all of the evi-
dence, whether the agency, in issuing its order, acted
unreasonably, arbitrarily, illegally or in abuse of its dis-
cretion." (Citations omitted.) *Dolgner* v. *Alander*, 237
Conn. 272, 280, 676 A.2d 865 (1996).

"The substantial evidence rule governs judicial
review of administrative fact-finding under the UAPA.
General Statutes § 4-183 (j) (5) and (6). An administra-
tive finding is supported by substantial evidence if the
record affords a substantial basis of fact from which
the fact in issue can be reasonably inferred. . . . The
substantial evidence rule imposes an important limita-
tion on the power of the courts to overturn a decision
of an administrative agency . . . ." (Citations omitted;
internal quotation marks omitted.) Id., 281. "It is funda-
mental that a plaintiff has the burden of proving that
the [department], on the facts before [it], acted contrary
to law and in abuse of [its] discretion . . . . The law
is also well established that if the decision of the
[department] is reasonably supported by the evidence it
must be sustained." (Internal quotation marks omitted.)
*Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn.
333, 343–44, 757 A.2d 561 (2000).

After a thorough review of the record, we cannot
conclude that the department abused its discretion and,
therefore, affirm the judgment of the court. Under Uni-
form Policy Manual § 1570.25 (D) (3) (a), one of the
prerequisites for circumstances to be found "excep-

tional" is that they are both "severe and unusual."[10] The hearing officer specifically concluded that Richard Hogberg was suffering from the "normal frailties of an older individual" and that his "circumstances are not exceptional for a seventy-one year old" man. If the medical conditions from which the community spouse suffers are not severe and unusual, "exceptional circumstances" do not exist, and the department must deny the community spouse's request to increase the allowance.

Furthermore, it is also clear that the court correctly applied the Uniform Policy Manual standards to the plaintiffs' claim concerning the effects of Richard Hogberg's ailments on his daily life and on his ability to remain in the community. While the hearing officer found that Richard Hogberg incurred several expenses and hardships resulting from his ailments, what is more important is that not all of the expenses incurred as a result of his ailments were beyond his control,[11] and several were factored into the allowance formula.[12] Although the plaintiffs also argue that if Richard Hogberg failed to take his medications, he would be at an increased risk of hospitalization or long-term care, there was no finding that Richard Hogberg was unable to take his medications or was at an immediate risk of being unable to take his medications. In light of the foregoing, the court's denial of the plaintiffs' appeal is appropriate and supported by evidence in the administrative record.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] See footnote 6 of this opinion.

[11] As the court noted, the "exceptional circumstances" provision was not designed to prevent against indebtedness, but only to ensure that the community spouse could remain in the community. By eliminating or reducing some of his expenses that are within his control, Richard Hogberg could remain in the community without an increase in the allowance.

[12] See footnote 6 of this opinion.